DAVID GARCÍA NEGRÓN ET AL., peticionarios, *v.* TRIBUNAL SUPERIOR, SALA DE GUAYAMA, HON. CARLOS RODRÍGUEZ DE JESÚS, JUEZ, demandado; GILBERTO RODRÍGUEZ TORRES y ABC INSURANCE CO., interventores.

*Número:* O-75-399 *Resuelto:* 31 de marzo de 1976

728

*Nachman, Feldstein & Gelpí,* y *Eduardo Castillo Blanco,* abogados de los peticionarios; *Vicente Santori Coll,* y *Jaime Sifre Rodríguez,* abogados de los interventores.

EL JUEZ ASOCIADO SEÑOR TORRES RIGUAL emitió la opinión del Tribunal.

■ El ordenamiento procesal adquiere su mayor eficacia cuando las normas que lo integran son interpretadas con el propósito de promover el objetivo fundamental de garantizar una solución justa, rápida y económica de las controversias judiciales. La razón y finalidad de la norma es pues el imperativo que determina su alcance. La función ineludible de este Tribunal consiste en darle vigencia a la norma conforme a este elemento teleológico en su aplicación a casos concretos. Véase Castán: *Teoría de la Aplicación e Investigación del Derecho,* pág. 240 (Ed. 1947).

El caso de autos requiere el ejercicio de esta función con respecto a la disposición contenida en el Art. 402 del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 1734, estableciendo el privilegio de la comunicación entre médico y paciente([1]) y su relación con la Regla 32 de Procedimiento Civil que provee el procedimiento para el examen médico de una parte cuando su estado mental o físico está en controversia.

Los hechos que delimitan el ámbito de la cuestión planteada se refieren a una reclamación de daños por la alegada negligencia profesional de un médico. El peticionario David García Negrón instó demanda reclamando $1,500,000.00 por concepto de daños alegadamente causados por la negligencia profesional del interventor Gilberto Rodríguez Torres al prestarle éste sus servicios como oftalmólogo. Después de presentada la demanda, un médico designado por el interventor examinó a García Negrón bajo las disposiciones de la Regla 32 de Procedimiento Civil, 32 L.P.R.A. Ap. II, R. 32. En adición al examen médico, el tribunal de instancia dictó a solicitud del interventor una orden autorizándolo a examinar, copiar u obtener copias de los récords médicos que obraban en posesión de varios facultativos que habían examinado a García Negrón en relación con su alegada condición física. También ordenó al

---

([1]) El Art. 402 del Código de Enjuiciamiento Civil en lo pertinente provee:

"No se podrá examinar a una persona como testigo en los casos siguientes:

1. . . . . . . . .
2. . . . . . . . .
3. . . . . . . . .

4. Un médico o cirujano, o el ayudante de cualquiera de éstos, no podrá, sin el consentimiento del paciente, ser examinado en una acción civil con referencia a alguna información adquirida mientras asistía al enfermo, la cual era necesaria para que el médico o cirujano pudiese prescribir para dicho enfermo, o resolver lo conveniente; pero este párrafo no será aplicable a una acción entre el médico o cirujano y su cliente, en la que se ventilare el tratamiento del enfermo por el médico o cirujano; Disponiéndose, que un médico o cirujano será competente para testificar sobre la causa de la muerte de cualquiera persona."

peticionario producir los récords médicos que indicaban el tratamiento que él recibió de dos facultativos residentes en la ciudad de Nueva York. El peticionario objetó dicha orden aduciendo que los récords médicos constituían materia privilegiada, que él no había renunciado al privilegio conforme las disposiciones de la Regla 32 y que dichos récords obraban en poder de terceras personas.

Expedimos el auto para revisar la orden del tribunal.

La posición del peticionario es al efecto de que la Regla 32 preserva el privilegio de la comunicación entre médico y paciente, disponiendo que solamente se renuncia cuando la persona examinada solicita copia del examen y en efecto se le entrega. Arguye que si la persona examinada no solicita copia del examen, no renuncia al privilegio y la otra parte no puede obtener información sobre su condición médica no importa cuán material o relevante sea ésta con respecto a la controversia del caso. (²) En consecuencia, como él no solicitó al interventor copia del examen médico que a requerimiento de éste se le hizo no ha renunciado pues al privilegio de la comunicación entre médico y paciente y, por lo tanto, no procedía la orden del tribunal de instancia autorizando al interventor a examinar, obtener copias o copiar récords médicos de los facultativos que lo habían tratado en relación con su condición física.

---

(²) La Regla 32.2(a) en lo pertinente lee:

"(a) Si así lo solicitare la persona examinada, la parte a cuya instancia se hizo el examen le entregará una copia de un informe del médico examinador, por escrito y detallado, haciendo constar sus determinaciones. Después de tal solicitud y entrega, la parte a cuya instancia se hizo el examen tendrá derecho, si así lo solicitare, a recibir de la parte examinada un informe similar de cualquier examen del mismo estado mental o físico, efectuado anterior o posteriormente . . . ."

La Regla 32.2(b) dispone:

"(b) Al solicitar y obtener un informe del examen así ordenado o al tomar la deposición del examinador, la parte examinada renuncia a cualquier privilegio que pueda tener en ese pleito o en cualquiera otro que envuelva la misma controversia, con relación al testimonio de toda otra persona que le haya examinado o pueda examinarle en el futuro sobre el mismo estado mental o físico."

Es decir, el peticionario expande el privilegio de la comunicación entre médico y paciente para impedir el descubrimiento de prueba esencial a una justa, rápida y económica adjudicación de la controversia. No toma en cuenta que el privilegio no es de aplicación al caso de autos puesto que la reclamación se funda en la alegada negligencia de un médico. El Art. 402 del Código de Enjuiciamiento Civil, *supra*, expresamente excluye el privilegio de este tipo de acción al disponer que "no será aplicable a una acción entre el médico o cirujano y su cliente, en la que se ventilare el tratamiento del enfermo por el médico o cirujano." Véase escolio 1 *supra*. La exclusión arranca evidentemente del valor que representa para la administración de justicia la ventilación en juicio de todos los hechos materiales y pertinentes a la controversia. El procedimiento judicial tiene el propósito de llegar a la verdad y en consecuencia no debe excluirse la ventilación de hechos esenciales, a menos que con ello se vindique un interés superior de la sociedad o de la persona. Son muy contados los casos en el que el privilegio de médico y paciente puede vindicar un interés superior a la dilucidación de la verdad en un proceso judicial.

Pocas disposiciones legales han sido tan severamente criticadas como la del privilegio de la comunicación entre médico y paciente. Véanse Wigmore VIII, *Evidence in Trials at Common Law*, sec. 2380(a) (Ed. 1961); McCormick on *Evidence* pág. 223 (1954); Morgan, E. M.: *Suggested Remedy for Obstructions to Expert Testimony by Rules of Evidence*, 10 U. Chi. L. Rev. 285; Chafee, Z.: *Privileged Communications: Is Justice Served or Obstructed by Closing Doctor's Mouth on the Witness Stand?*, 52 Yale L.J. 607; De Witt, C.: *Privileged Communications Between Physician and Patient*, pág. 31 y sig. (Charles C. Thomas, Publisher). En sus orígenes se intentó justificar el privilegio a base del supuesto interés en estimular la comunicación franca y abierta entre médico y paciente en aras de lograr un diagnóstico y tratamiento ade-

cuado. *Edington* v. *Mutual Life Ins. Co.*, 76 N.Y. 185, 194 (1871), De Witt, *op. cit.*, supra, a la pág. 271. El fundamento se desvanece ante el menor análisis.

Los casos en que la confidencialidad de la comunicación es necesaria para estimular la relación franca entre médico y paciente son excepcionales. La realidad es que hoy en día las enfermedades y padecimientos físicos son tema frecuente de conversación en reuniones sociales entre amigos y meros conocidos. Es usual el que una persona salga del consultorio del médico y sin el menor empacho narre sus dolencias a familiares y compañeros de trabajo. Salvo, por supuesto, los casos que envuelven problemas siquiátricos o que caen en el campo vedado del sexo, como el aborto, las enfermedades venéreas, la impotencia o la frigidez sexual, en todos los cuales hay un genuino interés en mantener la confidencialidad de la comunicación. Ninguna de estas condiciones está aquí envuelta.

No es sostenible que una persona se inhiba de darle a su médico la información necesaria sobre su condición por temor a que se divulgue ante un tribunal. Distinto al privilegio de abogado y cliente, al que se suele equiparar la comunicación entre médico y paciente, la persona que acude a un médico no lleva en mente la posibilidad de un pleito en el que pueda divulgarse su comunicación en los tribunales. Su interés fundamental es curarse de sus dolencias. No es lógico pues que se inhiba de obtener tratamiento o de comunicar al médico abiertamente sus síntomas por temor a que se pueda divulgar la información en un tribunal.

■ El privilegio de la comunicación entre el médico y paciente nunca ha sido reconocido en el derecho consuetudinario inglés ni en el de los Estados Unidos. Hayt & Hayt: *Legal Aspects of Medical Records* (Physicians' Record Company, Berwin, Illinois, 1964). Su origen es estrictamente estatutario y hay cerca de 17 jurisdicciones que no lo reconocen. McCormick, *op. cit.*, supra, a la pág. 211.

Los cánones que rigen la conducta profesional del médico adoptados por la Asociación Médica Americana admiten la obligación del médico de divulgar la comunicación de su paciente cuando es requerido por ley, o sea necesario para proteger el bienestar de la comunidad o del individuo. Véase Principios de Etica Médica de la Asociación Médica Americana, según publicado en Richardson: *Doctors, Lawyers and the Courts* (W. H. Anderson Company, Cincinnati), (1965). La propia profesión médica reconoce así la preeminencia del interés social en la administración de justicia por encima del interés del paciente en que no se divulguen hechos esenciales para la adjudicación de una controversia judicial.

■ Wigmore señala cuatro condiciones fundamentales para el reconocimiento de una comunicación privilegiada, a saber: 1) la comunicación tiene que haberse originado en la confianza de que no será divulgada; 2) este elemento de confidencialidad tiene que ser esencial para mantener plena y satisfactoriamente la relación entre las partes; 3) la relación debe ser una que la comunidad considere que debe ser diligentemente promovida y 4) que el perjuicio que causaría la divulgación de la comunicación sea mayor que el beneficio obtenido por la correcta disposición del pleito. *Op. cit.*, supra, sec. 2285, pág. 527.

Aparte del interés de la comunidad en promover la relación de médico y paciente, la comunicación entre ambos no satisface ninguno de los otros criterios. Como ya vimos, son excepcionales los casos en que la comunicación al médico es propiamente confidencial. El perjuicio a la administración de justicia, sin embargo, es por mucho superior al beneficio que recibe el paciente por suprimir la divulgación en un proceso judicial. Es por eso que el privilegio ha sido considerablemente restringido por los estatutos que lo regulan y por interpretaciones judiciales.

■ El Art. 403 del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 1735, confiere una amplia discreción a los jueces

de instancia para admitir cualquier testimonio cuando a ello no se opusiere oportuna objeción, o hallare el tribunal por inferirlo de evidencia adecuada que el consentimiento se ha dado expresa o tácitamente. ([3]) Se considera en algunas jurisdicciones que la mera radicación de la demanda reclamando daños corporales constituye una renuncia implícita al privilegio. Riter, Robert C.: *Patient-Physician Privilege in the Discovery Process*, 17 S.D. L. Rev. 188, 196 y casos citados en el escolio 55. Así se resolvió en California de donde procede nuestro Art. 402, *supra*. *Moreno* v. *New Guadalupe Mining Co.*, 35 Cal. App. 744, 170 Pac. 1088 (1917). La razón para inferir la renuncia es obvia, ya que la supuesta confidencialidad de la comunicación desaparece cuando el propio paciente la divulga públicamente al iniciar una acción judicial.

Posterior al caso de *Moreno* v. *New Guadalupe Mining Co.*, supra, se enmendó en California el estatuto para proveer expresamente que la radicación de una demanda reclamando daños corporales constituía una renuncia del privilegio. Sec. 1881 (4), Código de Proc. Civ. de Cal., West's Anno. Civ. Proc. Code. En el 1965 se aprobó el Código de Evidencia derogando la mencionada Sec. 1881 y sustituyéndola por las Secs. 990 a 1007, West's Ann. Evid. Code, secs. 990–1007, las cuales contienen tantas excepciones al privilegio que el mismo es inoperante para todo fin práctico.

Atento a la sana crítica de la doctrina científica, el American Law Institute propuso en el 1942 la eliminación del privilegio en el anteproyecto del Código Modelo de Evidencia. También en el 1950 la Conferencia Nacional de Comisionados sobre Leyes Estatales Uniformes acordó la eliminación del pri-

---

([3]) En lo pertinente el Art. 403 lee:

"Nada de lo contenido en esta sección afectará al derecho que tiene el tribunal a admitir cualesquiera de los testimonios mencionados en la sec. 1734 de este título, cuando a ellos no se opusiere oportuna objeción, o hallare el tribunal, por inferirlo de evidencia adecuada que el consentimiento mencionado en dicha sección se había dado, expresa o tácitamente."

vilegio de las Reglas Uniformes de Evidencia. *Handbook of the National Conference of Commissioners Uniform State Laws* (1950), pág. 151. En el 1953, sin embargo, la Conferencia volvió a restituirlo incluyéndolo en la propuesta Regla 27 pero en forma opcional ya que aparece entre corchetes. Los comentarios contenidos en el Informe de la Conferencia Nacional sobre el privilegio recogen adecuadamente el sentir de la crítica.

"La ética profesional da al paciente una amplia y eficiente protección contra la divulgación de sus confidencias por el médico, fuera de la sala de un tribunal. Es de dudar, si es de interés público el extender el derecho del paciente a cerrar los labios del médico como testigo en una acción donde la condición del paciente es un asunto material y relevante." 3 P.F.P., pág. 320. (Traducción nuestra.)

El Proyecto de Reglas de Evidencia sometido por el Tribunal Supremo de los Estados Unidos al Congreso también eliminó el privilegio reconociéndolo únicamente en cuanto a la comunicación entre el psiquiatra y el paciente. Véase Proposed Federal Rules of Evidence, Rule 504, pág. 78.

En Puerto Rico, tanto el Proyecto de las Reglas de Evidencia propuesto por este Tribunal en el 1954 como en el 1958 se adopta el privilegio con las restricciones contenidas en el Código Modelo y en las Reglas Uniformes. El Comentario del Comité Consultivo explica la Regla 209 propuesta en los siguientes términos:

"Esta regla incorpora las Reglas 220–223 del Código Modelo y la Regla 27 de las Reglas Uniformes. Establece protecciones contra el abuso del privilegio en litigios por daños personales, en acciones en que se impugnan testamentos, y en pleitos sobre pólizas de seguros. El art. 402(4) del Código de Enjuiciamiento Civil no contiene tales salvaguardias. El mismo es reemplazado por esta Regla." 3 P.F.P., pág. 171.

El trasfondo anterior sirve para poner en su verdadera perspectiva el privilegio de la comunicación entre médico y

paciente en relación con el planteamiento del peticionario de que el tribunal de instancia no tiene facultad para autorizar al interventor a examinar u obtener copias de los récords médicos que obran en poder de los distintos facultativos que trataron al peticionario, ni para ordenar a éste producir los récords médicos que reflejan el tratamiento que recibió de dos facultativos residentes en Nueva York.

■ El procedimiento establecido en la Regla 32, *supra*, para el descubrimiento de los informes médicos opera sobre la existencia del privilegio de la comunicación entre médico y paciente. Es por eso que dicha Regla requiere la renuncia previa del privilegio. Pero cuando el privilegio no existe no hay nada a que renunciar y por tanto, la Regla 32 no es de aplicación.

■ La inaplicabilidad de la Regla 32 al caso de autos no significa, sin embargo, que los interventores no tienen a su disposición otros medios de descubrimiento de prueba. En *Fantauzzi* v. *Tribunal Superior*, 103 D.P.R. 113 (1974), resolvimos que una vez renunciado el privilegio conforme el procedimiento establecido en la Regla 32, una parte podía descubrir los récords médicos mediante la solicitud al tribunal ordenándole a los terceros en cuyo poder obran los informes a comparecer a una toma de deposición, según lo autoriza la Regla 23, trayendo consigo cualquier informe médico que estuviere bajo su posesión. No debe entenderse que *Fantauzzi* limita el descubrimiento de los récords médicos a la toma de una deposición bajo la Regla 23. La deposición es por su naturaleza un medio costoso, no sólo en dinero sino en el tiempo que le toma a los facultativos y a los abogados de las partes.

La Regla 37 que regula la conferencia preliminar al juicio confiere una amplia facultad al tribunal de instancia para ordenar cualquier medida que pueda facilitar la más pronta terminación del pleito. Regla de Procedimiento Civil, 32 L.P.R.A.

Ap. II, R. 37. Nada impide que en el ejercicio de esa amplia facultad el tribunal de instancia ordene a las partes intercambiar informes médicos cuando éstos no están cubiertos por el privilegio de la comunicación entre médico y paciente. Así se ha resuelto en la jurisdicción federal de la cual proviene nuestra Regla 32. *Buffington* v. *Wood,* 351 F.2d 292 (1965) (3C); *Hickel* v. *Abousy,* 41 F.R.D. 152 (1966).

 Debe recordarse que el propósito del descubrimiento de prueba antes del juicio es evitar sorpresas, simplificar las cuestiones litigiosas y acelerar los procedimientos. *Sierra* v. *Tribunal Superior,* 81 D.P.R. 554 (1959). El descubrimiento de prueba debe pues alentarse en forma liberal y amplia para que puedan depurarse los hechos en el juicio sin el temor al engaño, al fraude y la falsedad. Las partes no pueden rehuir la obligación recíproca de descubrir prueba esencial al juicio alegando que no la tienen en su poder si no es gravoso el obtenerla. Es muy sencillo para una parte obtener un informe escrito del médico que lo atendió sobre su condición física, el diagnóstico, el tratamiento prescrito y el pronóstico y enviárselo a la parte adversa.

 En el ejercicio de la facultad incidental conferida por el Art. 7 del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 44, (⁴) el tribunal puede también ordenarle al médico, bajo aquellas condiciones que considere justas conforme las circunstancias del caso, que envíe directamente a la parte que lo solicita un informe médico o que le permita examinar, copiar u obtener copias del récord médico relacionado con la condición física que el reclamante ha puesto en controversia.

---

[4] El Art. 7 del Código de Enjuiciamiento Civil en lo pertinente dispone:

"Toda corte tiene poder:

. . . . . .

"5. Para dirigir en bien de la justicia la conducta de sus funcionarios y de las demás personas que tuvieren algún interés en cualquier procedimiento judicial seguido ante ella, o actuación perteneciente a dicho procedimiento."

Desde antes de la aprobación de las Reglas de Procedimiento Civil de 1943 reconocimos la facultad inherente del tribunal de instancia bajo el mencionado Art. 7 para ordenar el examen físico facultativo de una parte. *Bahr* v. *Am. Railroad Co.*, 61 D.P.R. 917 (1943).

No hay razón válida para recortar ahora las facultades inherentes del tribunal de instancia cuando ha aumentado considerablemente el número de asuntos y la complejidad de la litigación. El sistema procesal tiene que ajustarse a esta realidad e indefectiblemente nuestra función renovadora debe propender a ese ajuste tan esencial para una solución justa, rápida y económica del litigio.

*Se dictará sentencia anulando el auto expedido y ordenando la devolución del caso para que se continúen los procedimientos a la luz de lo aquí decidido.*

El Juez Asociado Señor Martín concurre en el resultado y el Juez Asociado Señor Díaz Cruz concurre con voto separado.

—O—

Voto concurrente del Juez Asociado Señor Díaz Cruz.

San Juan, Puerto Rico, a 31 de marzo de 1976

El proceso judicial que desde su lejano principio no tuvo más propósito que esclarecer la verdad y dar la razón a quien la tiene, puede haberse tornado complicado y barroco con la profusión de reglas que hemos ido añadiendo, pero no ha perdido aquella primera aspiración de justicia. La ocultación de pruebas, invocada afirmativamente como instrumento para derrotar el derecho del adversario, más que una defensa, es un reto a la integridad del sistema judicial. Si un Presidente de los Estados Unidos no pudo prevalecer escondiendo sus cintas grabadas tras el impresionante bastión del privilegio de confidencialidad del jefe de estado (*U.S.* v. *Nixon*, 418 U.S. 683 (1974)) se disuelve en la nada la pretensión

del demandante que tras convertir por acto deliberado su salud y condición física en cuestión litigiosa pretende que los tribunales conozcan únicamente la parte que él esté dispuesto a revelar y que a base de una información por él clasificada y seleccionada, suprimiendo cuanto le sea adverso, se dicte sentencia en detrimento de la reputación profesional y el patrimonio del médico demandado.

Ninguna persona será privada de su libertad o propiedad sin debido proceso de ley, ni se negará a persona alguna en Puerto Rico la igual protección de las leyes. Constitución, Art. II, Sec. 7. Cuando se reclama un privilegio personal, inevitablemente surge una confrontación con otros valores, que en este caso están representados por las legítimas exigencias de un proceso judicial limpio. Los privilegios que impiden la revelación de determinados actos o comunicaciones esencialmente refrenan y derogan la búsqueda de la verdad y por lo tanto no han de crearse con liviandad ni interpretarse expansivamente. El sistema adversativo se caracteriza por la ventilación de todas las cuestiones y la depuración de todos los hechos relevantes ante un tribunal de ley. Para asegurar una decisión justa es de todo punto indispensable que la corte tenga poder para la producción compulsoria de la evidencia que necesita cualquiera de las partes. El privilegio resguardado contra valores eminentes destruiría la fe y la confianza pública en el sistema judicial.

Concurro con la opinión en el piadoso esfuerzo de reivindicar la justicia aun dentro del hostigado texto de la Regla 32.2 y el Art. 402 del Enjuiciamiento Civil. El debido proceso de ley garantizado por la Constitución nunca toleraría la supresión u ocultación de pruebas cuya aprobación se nos pide.