Ignacia **DIAZ REYES**, for Herself and in Representation of her Minor Son Angel R. **Negron Diaz, Edgardo Negron Diaz, and Alma Digna Negron Diaz,** Plaintiffs,

v.

**UNITED STATES of America,** Defendant.

**Civ. No. 89–1716 (JAF).**

United States District Court, D. Puerto Rico.

July 19, 1991.

Raymond Burgos–Santiago, Law Offices David Efron, San Juan, P.R., for plaintiffs.

José Vázquez–García, Asst. U.S. Atty., Civil Div., Daniel F. López–Romo, U.S. Atty., San Juan, P.R., Stuart M. Gerson, Asst. Atty. Gen., Roger D. Einerson, Asst. Director, Torts Branch Civil Div. Marie Louise Hagen, Trial Atty., Torts Branch, Civil Div. Dept of Justice, Washington, D.C., for defendant.

## OPINION AND ORDER

FUSTE, District Judge.

Plaintiffs are the widow and three children of Angel Negrón. Negrón received a blood transfusion at a Veterans Administration hospital in San Juan, Puerto Rico, in April of 1981. He tested positive for AIDS in June of 1988, and died on August 8, 1988. In the vague complaint filed in this action, plaintiffs allege that 1) the defendant was negligent in giving Negrón a transfusion tainted with AIDS, and 2) the defendant was negligent in failing to inform either Negrón or his wife about the presence of the AIDS virus, such failure which resulted in continuation of conjugal relations between the couple, and which therefore placed Ignacia Díaz Reyes at risk of contracting the AIDS virus. Although the wife has tested negatively for the AIDS virus, she suffers from anxiety that she may someday test positive and contract the disease. .

During the course of this case to date, plaintiffs have come up with or at least hinted at several lines of attack not included in the original complaint, or which are refinements or variations on a theme of the

general causes of action as alleged in the complaint. Since plaintiffs fail to explain these new concepts with any degree of clarity (and indeed have failed to seek to amend their complaint for the purpose of redefining their causes of action), we will attempt to do so. We will take up each aspect of plaintiffs' case in turn.

### Was the Need for a Transfusion Brought On By Negligent Acts of the Defendant?

■ The complaint never formally raises the spectre of negligence with respect to whatever prior act or omission placed Negrón in the position of needing a transfusion in the first place, but repeated reference to the case of *Gaffney v. United States*, 1990 WL 57625, 1990 U.S. Dist. LEXIS 5184 (CV NO. 88–1457–Z, April 26, 1990), indicates that plaintiffs would like us to consider this theory.[1] In that case a pregnant woman was under the care of doctors at a Naval hospital. The hospital staff negligently failed to induce labor at a time when accepted medical practice would have called for such a procedure. The woman gave birth two days later to a still-born child. Complications from the late birth resulted in a need for a blood transfusion. The blood was contaminated with AIDS, and the woman eventually contracted the disease and died as a result of it.

Since the transfusion took place in 1981, at a time when AIDS was only beginning to surface, the court found that the hospital could not have had a duty to test for AIDS in its blood supply. The court did, however, accept the theory that all transfusions carry some foreseeable risk, and that by placing the plaintiff in a position to *require* a transfusion when she would not otherwise have needed one, the hospital was liable for whatever harm the transfusion caused, whether that specific harm could have been foreseen at the time or not.

Plaintiffs fail to give us any Puerto Rico law on the issue of tort foreseeability as it would relate to liability in this type of scenario. We will therefore generously assume that Puerto Rico law would allow recovery on the same theory that was employed in the *Gaffney* decision. The problem is that plaintiffs also fail to adduce *any* facts to support the proposition that the medical necessity giving rise to the transfusion was negligently caused by the defendant. The complaint alleges that Negrón went into the hospital in 1981 for treatment relating to a pre-existing hepatitis condition, and was given the transfusion on that occasion. There is no detail as to why a transfusion was needed, and absolutely no facts alleged to support the proposition that defendant caused whatever situation made the transfusion necessary. Plaintiffs cannot create a substantial issue of material fact merely by a bare allegation that the transfusion was needed as a result of a condition caused by defendant's negligence, and thereby shift the burden of proof to the defendant to disprove that fact. Plaintiffs have simply "fail[ed] to make a showing sufficient to establish the existence of an element essential to [plaintiffs'] case, and on which [plaintiffs] will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). There are no facts anywhere in the record to support the proposition that Negrón needed a transfusion due to a prior negligent act of defendant.

### Did Defendant Fail to Inform Negrón of the Risks Inherent in Transfusion?

■ This theory is also not formally included in the pleadings, is also not supported by reference to Puerto Rico tort law, and also ultimately fails for a complete absence of factual allegation. We look to the case of *Kozup v. Georgetown University*, 663 F.Supp. 1048 (D.D.C.1987), *aff'd in part and vacated in part*, 851 F.2d 437 (D.C.Cir.1988), *aff'd after remand*, 906 F.2d 783 (D.C.Cir.1990). In *Kozup*, a baby was born prematurely, and had complications which made transfusions necessary. The transfusions were complet-

---

1. We would not ordinarily sanction reference to an unpublished opinion, but in this situation the existence of the case, as such, helps to explain plaintiff's theory on this point.

ed in January of 1983. The blood contained the AIDS virus and the baby eventually contracted the disease and died. The parents sued the hospital, alleging, *inter alia,* that the hospital had failed to inform them of the risk of AIDS. The district court held, and the appellate court affirmed, that in 1983 there was virtually no way in which any reasonable medical provider could have known about the risk of AIDS from blood transfusion, since the disease was only then being diagnosed and identified for the first time. The court went on to find that even assuming that the hospital could have accurately estimated the risk of contracting AIDS which a transfusion would entail, that risk was so infinitesimal at the time, and the medical consequences of *not* opting for a transfusion so severe, that no reasonable parent could have failed to consent to the procedure. The court then looked to the elements of the tort of failure to disclose, and found that one element is that the failure *caused* the injury, in that a proper disclosure would have resulted in a different decision. Since the court found that the disclosure to the parents could still not have changed their minds regarding the procedure, the court found that summary judgement on that cause of action was appropriate.

Since plaintiffs give us no Puerto Rico tort law to define their cause of action, we assume for the sake of our present discussion that this jurisdiction would recognize the tort in the same way as it was recognized in *Kozup.* Therefore, if plaintiffs could show that some duty to warn about AIDS existed in 1981, or some duty to warn about the general risk of transfusions existed, that the warning was not given, and that if it had been given, Negrón would have opted not to have the transfusion, they might have a cause of action. There are no facts on record which tend to show either that Negrón was not warned generally about blood transfusions, or that, assuming he was not warned, the failure to warn "caused" his illness, in the sense that if warned he would not have consented. Plaintiffs cannot rest on a bare allegation, fishing for a cause of action by shifting the burden to the defendant to disprove it.

Plaintiffs do not have even the minimum of facts needed to go forward on this theory.

### Was There Consent, Informed or Otherwise?

■ As the appellate court in *Kozup* noted, a failure to warn may render a consent uninformed, but a whole separate tort (battery) may lie if no consent was given whatsoever. *Kozup,* 663 F.2d at 439. Again, plaintiffs have no proof of the theory that Negrón did not consent to the procedure in 1981. We will not shift the burden to the hospital in the absence of any cognizable shred of evidence on plaintiffs' side with which to proceed.

### Was There a Negligent Failure to Test the Blood?

■ The *Kozup* case deals extensively with the medical chronology of AIDS. It appears from the decision that no possible test for the presence of the virus in blood was even contemplated in 1981. In fact, only the first cases of infected persons were being discovered, and the theories that the disease was transmitted by blood were only in the nascent stage. *Kozup,* 663 F.Supp. at 1051. Of course, we cannot accept the factfinding of another court in a different case. But plaintiffs have a duty, as the party charged with the burden of proof, of coming forward with some evidence of each element of its claim. One element of its claim as to the tort of failure to adequately screen the blood for the AIDS virus is that such screening was at least technically available at the time of the alleged negligence. We would have allowed plaintiffs to raise a material issue of fact as to this issue with as little as a single expert affidavit claiming that hospitals or blood banks *could* have employed some known procedure in 1981 to screen for AIDS. Plaintiffs produce nothing.

### Hepatitis?

■ Plaintiffs' complaint alleges that in 1981 Negrón was suffering from hepatitis, and that it was during treatment related to the hepatitis that he got the transfusion tainted with AIDS. In recent documents

plaintiffs argue that decedent got both AIDS and hepatitis from the transfusion. This allegation is directly contradicted by the medical record. Decedent suffered from hepatitis before he ever got the transfusion. The transfusion took place on April 8, 1981 (Exhibit A to Defendant's motion for summary judgment, p. 86A, "Record of Transfusion"). The record shows that on March 31, 1981, nine days *before* the transfusion, defendant's medical staff had alerted to the possibility of hepatitis (Ex. A, p. 74A). By April 3rd, he had tested positively for the disease, had been isolated, and had been given an "infectious disease consultation." (Ex. A, p. 72A). Plaintiffs produce no fact to contradict what is clear in the medical records: decedent already had and was being treated for hepatitis on the date that the transfusion at issue here took place. Although there always exists the possibility of a coincidence, that hepatitis-laced blood was transfused into decedent, who was already suffering from hepatitis, plaintiffs produce no evidence to indicate that that was the case here.

### Failure to Inform Negrón

Plaintiff Díaz Reyes alleges that she and her husband learned that he was suffering from the AIDS virus in June of 1988, shortly before he died. Plaintiff claims, without specifying a date, that defendant knew about Negrón's illness long before that. She claims, first, that defendant failed to advise Negrón himself that he was infected. Second, she claims that defendant failed to warn her that her husband was infected by the AIDS virus. The harm from the failure to advise is that the plaintiff and her husband continued to engage in conjugal relations without taking any preventive measures against the transmission of AIDS. Upon learning of her husband's infection in June of 1988, plaintiff began to suffer severe emotional distress caused by the fear that she was going to contract AIDS. Plaintiff has repeatedly tested negative for the AIDS virus, but

plaintiff alleges that current medical technology does not rule out the possibility that she is in fact infected, so her fear continues.

■ First as to informing Negrón. Plaintiffs have the burden of proving that the defendant knew or should have known at some time prior to June of 1988 (the date at which plaintiff Díaz Reyes admits she and her husband were informed of the virus) that Negrón was infected with AIDS, and that they failed to inform him of that fact. We will accept without argument that plaintiff and Negrón continued conjugal relations up until some time close to his death and that from June of 1988 until the present she suffers from a fear of AIDS. We look to the facts alleged which tend to prove the issues in dispute.

Plaintiff has the records from her husband's hospitalization in 1984. The hospitalization appears to have been in response to abdominal pain and a biopsy on a neck lymph node. The September 1984 hospital records show that Negrón:

> describes history of multiple sexual contacts through his military and civilian career. He denies homosexual contact; one lover, a drug addict, he refers dies in the Medical Center of pulmonary embolism but had been diagnosed AIDS.

> .    .    .    .    .

> [Negrón] now relates he has had various female sexual contacts one of which he refers died of AIDS in the Medical Center last April–May.

Although not without ambiguity, these notes tend to indicate at the least that some medical personnel employed by defendant as early as September of 1984 suspected that Negrón might have been exposed to AIDS. We will therefore assume the most generous interpretation for plaintiffs' case, that defendant knew, or should have known that Negrón had or was at risk for AIDS in 1984. We will assume that defendant had a duty to inform Negrón of their suspicions.[2]

---

**2.** This assumption itself is by no means secure. If in 1984 there was no valid test for AIDS and

no reason to believe that it was transmitted sexually, defendant may not have had a duty at

The problem is with the next link in the chain. Plaintiffs must prove that defendant *failed* to inform Negrón of his potential risk for AIDS. Plaintiffs must proffer some admissible proof on that issue to survive this motion. A mere allegation is not sufficient. Plaintiffs produce nothing. The only evidence which even begins to tend towards the needed proof is the fact that Negrón never told plaintiff Díaz Reyes that he was at risk for AIDS. We do not see how any reasonable trier of fact could find by a preponderance of the evidence that defendant failed to inform Negrón of his condition simply by the fact that Negrón failed to inform his wife.

### Failure to Inform Plaintiff Díaz Reyes

■ Plaintiff Díaz Reyes alleges that the defendant had an independent duty to inform her of her husband's condition. This would presumably have meant that even if he did not want to share the information with his wife, the hospital had a duty to inform her independently. This claim, of course, raises several problems. The first is whether a medical caretaker has any duty whatsoever to inform non-patients of the condition of a patient. Second is the question as to whether a medical caretaker has the right to disregard the privacy interests of the patient and through doing so violate the doctor-patient confidentiality. Our independent review of Puerto Rico law convinces us that, while the issue has not been specifically addressed in this jurisdiction, the Puerto Rico courts would not be prepared to recognize a duty of a doctor to violate the doctor/patient relationship, even to disclose the presence of AIDS to a spouse. The Puerto Rico Legislature has required doctors to report AIDS-positive tests to the Department of Health, but has never required or allowed that a doctor report AIDS to a spouse over the patient's objection. 24 L.P.R.A. §§ 571 *et seq.* Puerto Rico evidence law recognizes a strong doctor/patient privilege. 32 L.P.R.A.App. IV Rule 26. Although the Supreme Court of Puerto Rico does require disclosure in some cases before a tribunal,

*García Negrón v. Tribunal Superior,* 104 D.P.R. 727 (1976), it has never fashioned a court-made rule requiring disclosure of medical conditions to third parties. As a federal court sitting in diversity, we are not free to blaze new paths in local tort law, and we will not do so here. We note that on the federal level, recent Veterans Administration requirements *allow* for disclosure to a spouse, but *only* after certain conditions have been met. The new regulations do not require such disclosure. 38 U.S.C. § 4132. Were we to create a Puerto Rico disclosure duty which is broader than the federal statutory rule (if the Puerto Rico rule required absolute full non-discretionary disclosure to the spouse with no conditions precedent, for instance), thereby creating a tort law duty to disclose where the federal rule precludes disclosure, there might well be a Supremacy clause or preemption problem. Since we hold that Puerto Rico law does not recognize a duty to disclose to family members, we need not reach the Supremacy/preemption issue.

### Complaint Amendment

Plaintiffs seek to amend the complaint to bring in the supplier of the blood, the American Red Cross, as a defendant. In *Kozup,* 663 F.Supp. at 1056, the court found that no claim for failure to test the blood for AIDS could lie against the American Red Cross for blood collected in 1982 and transfused prior to January 1983 as no testing was then available. The claim of failure to inform plaintiff Díaz Reyes of her husband's condition is one that could lie, if at all, *only* against the hospital, not the 1981 blood supplier. We see no purpose in letting the amendment go forward where there is no cause of action which can be properly stated against the potential new defendant.

### Advisory Jury

Plaintiffs petition the court to impanel an advisory jury pursuant to Rule 39(c) of the Federal Rules of Civil Procedure. The issue is mooted by today's decision.

all. We make the assumption in order to in-

dulge plaintiffs' case at every conceivable turn.

*Conclusion*

1. Defendant's motion for summary judgment is GRANTED as to all issues.

2. The motion to amend the complaint and bring in the American Red Cross as a defendant is DENIED.

IT IS SO ORDERED.