# 2008 DTA 79

**TRIBUNAL DE APELACIONES
REGIÓN JUDICIAL DE CAGUAS
PANEL ESPECIAL**

VIRGILIO RAMOS TOMASINI, ELENA DEL C. JOGLAR CASTILLO

v.

*EX PARTE*

Núm. KLCE-2008-00755

San Juan, Puerto Rico, a 3 de junio de 2008

Panel integrado por su Presidente, el Juez Colón Birriel,
la Juez Jiménez Velázquez y el Juez Brau Ramírez

Colón Birriel, Juez Ponente

## TEXTO COMPLETO DE LA RESOLUCIÓN

### I

Elena del C. Joglar Castillo (en adelante, la *"peticionaria"*) recurre de una **Resolución** del 27 de mayo de 2008, emitida por el Tribunal de Primera Instancia, Sala de Caguas, Hon. Rubén Darío Bonilla Martínez, Juez, en el caso *Virgilio Ramos Tomasini v. Elena del C. Joglar Castillo, Ex parte,* Civil Núm. EDI2005-0092, sobre: divorcio (C.M.). Mediante el dictamen, notificado al siguiente día, se declaró **Con Lugar** una moción de Virgilio Ramos Tomasini (en lo sucesivo, el *"recurrido"*), que tiene el efecto de declarar **Sin Lugar** la solicitud de la peticionaria para que se expidiera una citación de testigo y el evitar que se hicieran formar parte de los autos del caso y se diera acceso a la Trabajadora Social del caso, a los informes de los terapistas que han tratado al menor en el caso durante el último año.

Considerada la *Petición de Certiorari* y la *Moción en Auxilio de Jurisdicción* que se acompañó, presentadas ambas el 2 de junio de 2008, a las 3:27 y 3:28 de la tarde, respectivamente, traídas a nuestra atención a las 4:40 p.m., de ese día, se denegó la solicitud de la paralización de los procedimientos pautados para el 3 de junio de 2008, ante el Tribunal de Primera Instancia, Sala de Caguas, así como la petición de *certiorari*, presentada por el peticionario.

### II

La peticionaria y el recurrido presentaron petición de divorcio por consentimiento mutuo el 8 de agosto de 2000. El 30 de agosto de 2000, el foro de instancia emitió sentencia decretando roto y disuelto el vínculo matrimonial. Así las cosas, el 9 de julio de 2004, la peticionaria solicitó revisión de la pensión alimentaria impuesta a favor de su hijo menor, VJRJ, quien padece del *"Síndrome Down"*.

Posteriormente, el 5 de enero de 2005, la peticionaria requirió la paralización inmediata de las relaciones paterno-filiales. Acompañó con su solicitud una certificación médica del pediatra del menor, VJRJ. Formuló su reclamo en que el recurrido entregó al menor, VJRJ, con hematomas en los hombros, los brazos y petequia en sus mejillas.

No obstante, el pediatra del menor identificó las marcas como hematomas producidos por la mano de un hombre. Expresó que el menor había sido cogido por los brazos y jamaqueado fuertemente y que los capilares rotos de la cara eran consecuencia de ello y orientó a la peticionaria a presentar una querella en el Departamento de la Familia.

Como consecuencia de dicho incidente, el foro sentenciador suspendió las relaciones paterno-filiales y señaló una vista con carácter urgente para el 14 de enero de 2005. Luego de presentada la prueba y el testimonio del pediatra, determinó que el menor había sido golpeado durante el período de tiempo que estuvo bajo la custodia del recurrido. Por ello, modificó las relaciones paterno-filiales de forma provisional hasta tanto la trabajadora social no rindiera su informe.

El 13 de octubre de 2005, se celebró la vista de alimentos. Las partes informaron un acuerdo en cuanto a la pensión. Convinieron, además, que al trasladarse la peticionaria a residir con el menor al estado de Arizona, la pensión alimentaria se ajustaría a $750 mensuales.

Luego de diversos trámites judiciales, los cuales incluyeron recursos de revisión judicial a este foro, el caso retornó al tribunal de instancia.

El 31 de agosto de 2007, el recurrido presentó *Moción en Solicitud de Relación Paterno- Filial,* en aras de que se realizara un examen sobre las relaciones de forma fija, ampliándose las existentes, fijadas por instancia, allá para el 14 de enero de 2005. En atención a lo peticionado, el 18 de septiembre de 2007, el tribunal de

instancia emitió *Resolución* ordenando a la peticionaria a exponer su posición en veinte (20) días. Posteriormente, el 26 de octubre de 2007, el tribunal emitió *Resolución* señalando vista sobre relaciones paterno-filiales para el 11 de diciembre de 2007, la cual tuvo que ser transferida por conflictos de calendario de la peticionaria y su representante legal.

Tras la presentación de varios escritos por ambas partes, el 8 de enero de 2008, el tribunal emitió *Resolución* señalando vista para el 20 de febrero de 2008. Durante la audiencia, el tribunal reseñaló la vista de desacato sobre incumplimiento de las relaciones paterno-filiales para el 3 de junio de 2008, a la cual debería acudir la peticionaria y el menor VJRJ.

Por su parte, el 7 de mayo de 2008, la peticionaria presentó *Moción Solicitando que se Una el Informe de Heidi Quinlan a los Informes de la Trabajadora Social...* En igual fecha, la peticionaria presentó *Moción Urgente Solicitando Citación de Testigos.* En consideración a lo solicitado, el 8 de mayo de 2008, el tribunal de instancia emitió *Resolución* ordenando al recurrido a exponer su posición a ambos escritos dentro del plazo de veinte (20) días.

Cumpliendo con lo ordenado, el recurrido presentó *Moción* oponiéndose a lo solicitado por la peticionaria. Mediante **Resolución** de 27 de mayo de 2008, notificada al siguiente día, el tribunal de instancia declaró **Con Lugar** la moción del recurrido, decretando **Sin Lugar** la solicitud de la peticionaria para que se expidiera una citación de testigo y el evitar que se hicieran formar parte de los autos del caso y se diera acceso a la Trabajadora Social del caso, a los informes de los terapistas que han tratado al menor VJRJ.

En desacuerdo con el dictamen, el 2 de junio de 2008, la peticionaria presentó su recurso de *certiorari.* Adujo que incidió el tribunal de instancia al: 1) no ordenar la expedición de citación de testigo solicitada por ésta violentándose así el debido proceso de ley, coartándole el derecho a presentar prueba a su favor; 2) negarse a que los informes relacionados a las terapias y/o tratamientos que ha recibido el menor VJRJ, se unieran a los expedientes sociales y psiquiátricos que obran en el tribunal para la debida consideración y validación por parte de la trabajadora social y el tribunal; y 3) abusar de su discreción y conceder *sua sponte* un término de veinte (20) días al recurrido para oponerse a dos mociones presentadas por la peticionaria.

### III

La decisión de un tribunal en torno a la custodia y las relaciones paterno-filiales de un menor *"es una a la que se debe llegar luego de realizar un análisis objetivo, sereno y cuidadoso de todas las circunstancias presentes en el caso ante su consideración, teniendo **como único y principal objetivo el bienestar de los menores"**. Santana v. Osorio,* 116 D.P.R. 298, 301 (1985), énfasis suplido. Ello, a partir del Artículo 107 del Código Civil de Puerto Rico, 31 L.P.R.A. § 383, que dispone, en su parte pertinente, como sigue: *"En todos los casos de divorcio, los hijos menores serán puestos bajo el cuidado y la patria potestad del cónyuge que el Tribunal, en el ejercicio de su sana discreción, considere que los mejores intereses y bienestar del menor quedarán mejor servidos...".* La determinación de cuáles son los mejores intereses del menor está enmarcada en el derecho que éste tiene a una correcta formación física, moral y espiritual. *Nudelman v. Ferrer Bolívar,* 107 D. P.R. 495, 511 (1978). Para poder determinar que un dictamen judicial redundará en el mayor bienestar del menor es preciso examinar el siguiente listado no taxativo:

*"La preferencia del menor, su sexo, edad y la salud mental y física; el cariño que puede brindársele por las partes en controversia; la habilidad de las partes para satisfacer debidamente las necesidades afectivas, morales y económicas del menor; el grado de ajuste del menor al hogar, la escuela y la comunidad en que vive; la interrelación del menor con las partes, sus hermanos y otros miembros de la familia; y la salud psíquica de todas las partes." Marrero Reyes v. García Ramírez,* 105 D.P.R. 90, 105 (1976).

El principio de protección a los mejores intereses y el bienestar del menor delimitan los contornos del poder

discrecional del tribunal en este caso. En efecto, el poder para adjudicar tiene su génesis en el ejercicio por los tribunales del poder de *parens patriae*, es decir, en el reconocido poder del Estado de proteger a los incapaces. El poder de *parens patriae* limita los derechos de otras partes, a fin de salvaguardar el bienestar de quien no puede abogar por los suyos. Es la función social y legal que el Estado asume y ejerce, en cumplimiento de su deber de brindar protección a los sectores más débiles de la sociedad. **Es por ello que cualquier conflicto que un tribunal perciba entre intereses ajenos y el mejor interés de un menor deberá resolverse a favor del menor.**

Con este marco de referencia, analicemos las controversias ante nuestra consideración. En esencia, las contenciones de la peticionaria se circunscriben a que incidió el tribunal *a quo* al no ordenar la expedición de citación de testigo a la terapeuta del menor y negarse a que los informes relacionados a las terapias y/o tratamientos que ha recibido el menor se unieran a los expedientes sociales y psiquiátricos que obran en el tribunal. Veamos.

Resulta pertinente esbozar la normativa sobre el privilegio médico-paciente en Puerto Rico, a la luz de la solicitud de la peticionaria de que los informes de la terapeuta del menor VJRJ en Arizona sean unidos a los autos del caso.

Los privilegios reconocidos en nuestro derecho probatorio operan como reglas de exclusión de evidencia. Explica el profesor Ernesto Chiesa que, como tales, su fundamento:

*"...es totalmente independiente, y de ordinario antagónico, de la búsqueda y consecución de la verdad, propósito cardinal del derecho probatorio. Se excluye materia privilegiada por consideraciones de política pública, para adelantar valores o intereses sociales ajenos o antagónicos a la búsqueda de la verdad, tan fundamental para la más justa adjudicación de las controversias judiciales."* E.L. Chiesa, *Tratado de Derecho Probatorio,* Tomo I, (1998), a la pág. 185.

Siendo ésta la consecuencia de los privilegios, su aceptación requiere que se cumplan cuatro condiciones fundamentales:

*"1) la comunicación tiene que haberse originado en la confianza de que no será divulgada; 2) este elemento de confidencialidad tiene que ser esencial para mantener plena y satisfactoriamente la relación entre las partes; 3) la relación debe ser una que la comunidad considere que debe ser diligentemente promovida, y 4) que el perjuicio que causaría la divulgación de la comunicación sea mayor que el beneficio obtenido por la correcta disposición del pleito."* García Negrón v. Tribunal Superior, 104 D.P.R. 727, 734 (1976).

Además, como la exclusión de prueba basada en los privilegios responde a la *"confidencialidad... para proteger al titular del derecho,"* no los puede invocar *"cualquier persona o parte en el pleito."* Id. E.L. Chiesa, *Tratado de Derecho Probatorio,* Tomo I, (1998), a la pág. 185, (énfasis suplido).

En torno al privilegio médico-paciente, la Regla 26 (B) de Evidencia, 32 L.P.R.A. Ap. IV, R. 26(B), dispone como sigue:

*"Sujeto a lo dispuesto en esta regla, el paciente, sea o no parte en el pleito o acción, tiene el privilegio de rehusar revelar, y de impedir que otro revele, una comunicación confidencial entre el paciente y el médico si el paciente o el médico razonablemente creían que la comunicación era necesaria para permitir al médico diagnosticar o ayudarle en un diagnóstico de la condición del paciente o para prescribir o dar tratamiento a la misma. El privilegio puede ser invocado no sólo por su poseedor, el paciente, sino también por una persona autorizada para invocarlo en beneficio del paciente, o por el médico a quien se hizo la comunicación confidencial, si éste lo invoca a nombre de y para beneficio del paciente."*

Para comprender cabalmente el alcance de esta regla, es preciso estudiar varias definiciones. La primera se encuentra en la Regla 26 (A)(1), que incluye en la definición de médico al *"sicoterapista, ya sea éste siquiatra o psicólogo."* 32 L.P.R.A. Ap. IV, R. 26(A)(1). Según la misma regla, el paciente es aquella persona *"que con el único fin de obtener tratamiento médico, o un diagnóstico preliminar a dicho tratamiento, consulta a un médico o se somete a examen por éste."* 32 L.P.R.A. Ap. IV, R. 26(A)(2). Por otra parte, la regla también define la comunicación confidencial, como aquella *"habida entre el médico y el paciente en relación con alguna gestión profesional basada en la confianza de que ésta no será divulgada a terceras personas, salvo a aquellas que sea necesario para llevar a efecto el propósito de la comunicación."* 32 L.P.R.A. Ap. IV, R. 26(A)(3).

El privilegio médico-paciente está sujeto a diez excepciones enumeradas en la Regla 26(C). Ninguna de estas excepciones está presente en este caso. Sin embargo, como antesala a nuestra discusión ulterior resulta pertinente señalar que la décima excepción dispone que no estará protegida la comunicación cuando ésta *"es pertinente a una controversia relacionada con un **examen médico ordenado por el tribunal** a un paciente, sea el paciente parte o testigo en el pleito."* 32 L.P.R.A. Ap. IV, R. 26(C)(10) (énfasis suplido).

Por último, debemos tomar en consideración que: *"El procedimiento judicial tiene el propósito de llegar a la verdad y en consecuencia no debe excluirse la ventilación de hechos esenciales, **a menos que con ello se vindique un interés superior de la sociedad o de la persona**. Son muy contados los casos en el que el privilegio de médico y paciente puede vindicar un interés superior a la dilucidación de la verdad en un proceso judicial."* García Negrón v. Tribunal Superior, 104 D.P.R. 727, 731 (1976) (énfasis suplido). Nuestro Tribunal Supremo ha señalado que cuando los casos envuelven problemas siquiátricos, la confidencialidad es necesaria para motivar una relación franca entre médico y paciente. *García Negrón,* 104 D.P.R., a la pág. 733. En esas circunstancias, hay un verdadero interés en mantener la confidencialidad de la comunicación, que supera el interés en ventilar hechos pertinentes al litigio. *Id.*

Por analogía, en caso de relaciones paterno-filiales como el de marras, podemos examinar lo que opinan un gran número de juristas sobre el testimonio del psicoterapeuta de un menor en casos de custodia. Si bien puede tener gran valor en ciertos casos, este valor no supera el perjuicio causado al violentar la confidencialidad requerida por el tratamiento, mucho más cuando existe la posibilidad de contratar otros peritos para ilustrar al tribunal o para evaluar al menor para el propósito de determinar la custodia:

*"Undoubtedly, a child's therapist could provide useful information to the court, but the utility of the information may be outweighed by the child's right to privacy. If a mature child consents to having the therapist testify or if the therapist feels strongly that he should provide information to the court, the testimony provably would be appropiate.*

*If, however, the child and therapist believe that the privilege should be maintained (or if the child is too young to give meaningful consent and the therapist feels the privilege should be maintained), courts should respect the child's right to confidentiality. As with mental health issues concerning the parent, **if an evaluation of the child is needed, an evaluation could be done specifically for trial without disturbing the child's confidential relationship with the therapist.**"* Jeff Atkinson, *Modern Child Custody Practice,* Second Edition, Volume 2, §12-38, (1998), énfasis suplido.

Una solución propuesta es la de distinguir entre el psicoterapeuta que examina al menor por orden del tribunal y el psicoterapeuta contratado privadamente para propósitos de tratamiento. Véase, D.W. Shuman, *Psychiatric and Psychological Evidence,* Second Edition, §13.04, (1995). En la primera situación no existe el privilegio, puesto que el propósito del examen es, precisamente, informar al tribunal, no brindar tratamiento ni establecer una relación de confidencialidad. Por el contrario, el privilegio se activa cuando el psicólogo o siquiatra es contratado privadamente para brindar tratamiento, como en este caso. La terapeuta Heidi Quinlan ha atendido al menor VJRJ en el estado de Arizona a instancias de la peticionaria, por lo cual debemos considerar

sus hallazgos como unos sujetos al privilegio médico-paciente que se debe proteger, por ser confidenciales.

Tanto en Puerto Rico como en Estados Unidos, el tema de la confidencialidad de la comunicación entre cliente y psicoterapeuta es un asunto delimitado éticamente. Específicamente, el Código de Ética de la Asociación de Psicología de Puerto Rico establece en su Principio 6 lo siguiente:

*"Salvaguardar la información que se ha obtenido sobre un individuo al llevar a cabo las tareas de enseñanza práctica profesional o investigación, es una de las obligaciones principales de un psicólogo. Dicha información no se le comunica a otros excepto en casos especiales y atendiendo a las siguientes guías:*

*a. Toda comunicación profesional es estrictamente confidencial.*

*b. El psicólogo que le pide a un individuo que revele información personal durante el transcurso de entrevistas, pruebas o evaluación, o que permite que tal información le sea comunicada, lo hace solamente después de asegurarse que la persona está completamente consciente de los propósitos de la entrevista, prueba o evaluación, así como de la utilización que se le dará a dicha información. El psicólogo es responsable de informar al cliente aquellas situaciones generales en que no se compromete a mantener confidencialidad.*

*(...)*

*d. La información obtenida a través de consultoría, psicoterapia, evaluación psicológica o psicométrica se discute solamente con propósitos profesionales y sólo con aquellas personas a quienes realmente les concierne el caso, previa autorización del cliente. Los informes escritos y orales deben incluir solamente datos relevantes a los propósitos de la evaluación.*

*(...)*

*h. El psicólogo toma medidas para mantener la confidencialidad en la conservación y disposición final de los documentos confidenciales."*

Según las Guías Profesionales para la Evaluación Psicológica, propuestas en marzo de 1991 por la Asociación de Psicólogos de Puerto Rico: *"El evaluador debe tratar de evitar el desempeño simultáneo de roles que podrían resultar conflictivos."* De hecho, el que un psicoterapeuta tratante actúe simultáneamente, como perito, como sugiere la peticionaria, puede ser anti-ético. V.J. Lladó, MD F.A.P.A., *Brújula para Salud Mental*, a la pág. 255 (2000). La Asociación Americana de Psicología también ha cuestionado el rol dual terapista/evaluador, en unas guías interpretativas tituladas *Guidelines for Child Custody Evaluations in Divorce Proceedings*. En éstas se indica que un psicólogo debe evitar llevar a cabo evaluaciones de custodia en aquellos casos en los que haya desempeñado un rol terapéutico para el niño o su familia inmediata, o en los que su envolvimiento pueda comprometer su objetividad. Advierten las guías, además, que el psicólogo debe ser consciente del impacto que testificar en esas circunstancias puede tener sobre la relación terapéutica.

El Código de Ética de la Asociación Americana de Psicología trata también el tema de la confidencialidad de la información obtenida durante el tratamiento. En específico, dispone en su sección 4.01 que los psicólogos tienen la obligación primordial de proteger información confidencial y tomar precauciones razonables hacia ese fin, dentro de lo establecido por la ley, las reglas institucionales o las relaciones profesionales y científicas.

El que un psicoterapeuta que brinda tratamiento privado a un menor se involucre en el proceso judicial también puede contaminar la relación terapéutica y socavar la relación de confianza que ésta requiere. Explica el doctor Lladó que *"cuando el psicoterapeuta se adentra en el rol del perito... tendrá... que exponerse a revelar lo que ocurre durante las sesiones."* Por eso, la confidencialidad, que es *"un ingrediente indispensable*

*al desarrollo de la confianza"*, peligra una vez el psicoterapeuta *"se adentra ya en el territorio más público de los tribunales."* V.J. Lladó, *supra*, en la pág. 257. La probabilidad de violar la confidencialidad también puede resultar en la violación de un compromiso ético del psicoterapeuta con su paciente. M.G. Goldzband, *Custody Cases and Expert Witnesses: A Manual for Attorneys*, Second Edition, pág. 53, (1988). Ahora bien, a pesar de las normas éticas que le impiden al psicoterapeuta violar un acuerdo de confidencialidad, el privilegio de no revelar la información es del paciente y no del psicoterapeuta, a quien las reglas no reconocen ningún privilegio. *Id.* Por tanto, si el menor renuncia válidamente al privilegio, el psicoterapeuta está obligado a testificar en el juicio.

Decidir lo que responde al mejor bienestar del menor entraña una gran responsabilidad. Tomando en consideración los hechos del presente caso, pasamos a resolver, a la luz de nuestro derecho probatorio y nuestra política pública a favor de los mejores intereses y el bienestar del menor.

En el caso de marras es preciso destacar que en sus escritos la peticionaria ha solicitado que el foro de instancia incorpore los hallazgos del terapeuta del menor VJRJ. Ello resulta contrario a los protocolos establecidos por la Rama Judicial y el Programa de Relaciones de Familia en casos de menores. Además, de conformidad con la normativa a la cual hemos hecho referencia, los hallazgos de un terapeuta que trata al menor privadamente están protegidos bajo nuestra jurisdicción por el privilegio evidenciario de médico-paciente, reconocido por las Reglas de Evidencia. Ello fue objeto de análisis recientemente por nuestro más Alto Foro, quien categóricamente expresó que: *"si el perito es contratado privadamente con el fin de brindar tratamiento al menor, se establece una relación protegida estatutariamente por la Regla 26 de Evidencia y surge el privilegio médico-paciente en su vertiente psicoterapeuta-paciente. Este privilegio es exclusivo del menor que recibe el tratamiento y no del psicoterapeuta que lo atiende ni de sus padres".* Véase: *Ortiz v. Meléndez,* Op. de 3 de marzo de 2005, **2005 JTS 25**. Por ello, sus hallazgos a su vez constituyen materia privilegiada que no puede ser utilizada para impugnar las indagaciones o conclusiones a la que haya llegado la trabajadora social en su informe.

Por otro lado, de la peticionaria interesar que el informe que en su día rinda la trabajadora social refleje hallazgos del menor mientras permanece bajo la jurisdicción del estado de Arizona, ella podría solicitar al tribunal que ordene al Programa de Relaciones de Familia en Puerto Rico coordinar interagencialmente con el programa homólogo en dicho estado, para que emita un informe el cual pueda ser analizado e incorporado al informe final. En caso de que el estado de Arizona no tenga acuerdos de cooperación con nuestro Programa de Relaciones de Familia, dicho organismo podrá a solicitud de parte, contratar los servicios de un trabajador social en dicho estado para que lleve a cabo un estudio social y rinda un informe en coordinación con el trabajador social de Puerto Rico.

De otra parte, con relación a la solicitud de citación de testigo, debemos puntualizar en el hecho de que la terapista del menor de Arizona por ser un perito de la conducta contratado por la peticionaria, el tribunal no viene obligado a ser citado, sino que la parte lo puede traer como testigo-perito. Obviamente su testimonio será sólo para cuestionar la metodología utilizada por la trabajadora social local para llegar a sus conclusiones, es decir, debatir el procedimiento y la ausencia de indagaciones para advenir a esos resultados. Nada podrá declarar sobre las conclusiones o hallazgos a los cuales a llegado como producto de las terapias o tratamientos que le ha administrado al menor VJRJ, por ser todo ello materia privilegiada. Al denegar la solicitud de la peticionaria en cuanto a la inclusión de los hallazgos del terapeuta de Arizona al informe social, el tribunal actuó correctamente salvaguardando los mejores intereses del menor. Por lo cual, entendemos que no incidió el tribunal en el error alegado.

Por los fundamentos antes expuestos, denegamos el auto solicitado por la peticionaria, Elena del C. Joglar Castillo.

Notifíquese inmediatamente por telefax y correo ordinario.

Lo acordó el Tribunal y no certifica la Secretaria del Tribunal de Apelaciones.

María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones