EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Leila Ortiz García<br><br>Peticionaria<br><br>v.<br><br>Héctor Meléndez Lugo<br><br>Recurrido | Certiorari<br><br>2005 TSPR 19<br><br>163 DPR ____ |

Número del Caso: CC-2004-648

Fecha: 3 de marzo de 2005

Tribunal de Apelaciones:

       Región Judicial de Bayamón

Juez Ponente:

       Hon. Guillermo Arbona Lago

Abogado de la Peticionaria:

       Lcdo. Harold J. Rivera Vázquez

Abogado del Recurrido:

       Lcdo. Manuel E. Moraza Choisne

Materia: Fijación de Pensión Alimentaria, Regulación de Relaciones Paterno Filailes y Otros Extremos.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Leila Ortiz García

    Peticionaria

      v.

Héctor Meléndez Lugo        CC-2004-648     Certiorari

    Recurrido

Opinión del Tribunal emitida por la Jueza Asociada SEÑORA FIOL MATTA

En San Juan, Puerto Rico, a 3 de marzo de 2005.

La peticionaria, Leila Ortiz García, nos solicita que revoquemos una sentencia enmendada dictada el 8 de junio de 2004 por el Tribunal de Apelaciones. En ésta, el foro apelativo intermedio dispuso que la Dra. Bertis Delgado, psicóloga del hijo de la peticionaria y el recurrido, era la llamada a decidir si habría de testificar en el juicio en su fondo, donde se adjudicaría la custodia del menor. De esta forma, el Tribunal de Apelaciones revocó la resolución dictada por el foro de instancia, que había decidido no permitir que la psicóloga del menor testificara porque lesionaría la relación confidencial entre el niño y su terapeuta. Luego

de examinar con detenimiento el expediente y el derecho aplicable, hemos decidido expedir el auto solicitado para determinar finalmente si se debe admitir el testimonio del terapeuta que ha brindado tratamiento de forma privada a un menor, en un pleito en el cual sus padres se disputan la custodia.

I.

La peticionaria, Leila Ortiz García y el recurrido, Héctor Meléndez Lugo, sostuvieron una relación consensual durante la cual procrearon a D.A., un niño que actualmente cuenta con 7 años de edad. Las partes comenzaron a convivir en agosto de 1997 en una propiedad privativa del recurrido, sita en la Urbanización Versalles, Calle 1A-15, en Bayamón. Un mes después, el 9 de septiembre de 1997, nació el menor cuya custodia está en controversia. La señora Ortiz y el señor Meléndez nunca contrajeron nupcias. Ambos cuentan con estudios post graduados. La peticionaria posee una maestría, mientras que el recurrido tiene un grado doctoral. La peticionaria tiene otros dos hijos mayores de edad producto de una relación previa; en cambio, D.A. es el único hijo del recurrido.

El presente litigio tiene su génesis en una intensa batalla jurídica, la cual debemos relatar brevemente, para el mejor entendimiento de la naturaleza no solo procesal, sino humana, de esta controversia.

El 28 de febrero de 2001 el Tribunal de Primera Instancia emitió orden de protección al amparo de la Ley

Núm. 54 de 15 de agosto de 1989, según enmendada, en contra del recurrido. A consecuencia de dicha orden el señor Meléndez fue desalojado de la residencia de su propiedad que ocupaba con la señora Ortiz García, los hijos de ésta y el hijo de ambos, D.A. Debemos destacar que el 11 de mayo de 2001 el foro de instancia determinó que no había causa probable para someter acusación en contra del señor Meléndez por violación a la Ley 54, supra.

Entretanto, el 6 de marzo de 2001, la señora Ortiz García presentó una demanda en la que solicitó que se le reconociera a ella y a su hijo menor de edad el derecho a hogar seguro sobre la residencia que hasta entonces ocupaban. También solicitó que se prohibiera al señor Meléndez Lugo visitar o entrar a esta residencia, amparándose en la referida orden de protección, para lo cual, como ya señalamos, el tribunal no encontró causa probable. Por último, la señora Ortiz García pidió al tribunal que fijara una pensión alimentaria y dispusiera sobre las relaciones paterno-filiales. El 18 de mayo de 2001, el señor Meléndez Lugo contestó la demanda y reconvino, solicitando la custodia y patria potestad sobre su hijo. Además, solicitó que se ordenara el desalojo de la peticionaria de la casa donde residía con sus dos hijos mayores de edad y el hijo de ambos.

Luego de varios trámites procesales que incluyeron la intervención del Tribunal de Apelaciones, el foro de instancia concluyó que la residencia sita en la

Urbanización Versalles era privativa del recurrido y que la señora Ortiz García no podía reclamar sobre la misma el derecho a hogar seguro que dispone el artículo 109 A del Código Civil, 31 L.P.R.A. sec. 38(a). Eventualmente, ordenó a la peticionaria, que desalojara la propiedad so pena de sanciones. Quedó pendiente la adjudicación de la custodia del menor, que es lo que nos concierne en el presente recurso.

Antes de disponer sobre la custodia permanente, el Tribunal de Primera Instancia ordenó a la Unidad de Trabajo Social que llevara a cabo estudios sociales y psicológicos del menor. La trabajadora social, Sra. Wanda Bravo y la psicóloga clínica, Dra. Glori Mari Hamilton, los entrevistaron y evaluaron. En su informe, la doctora Hamilton señaló que el menor está afectado emocionalmente por la separación de sus padres, por lo que recomendó que se le brindara atención psicológica y apoyo emocional.

La selección del psicólogo que atendería al menor resultó ser tan conflictiva como los incidentes anteriores. En moción urgente presentada ante el foro de instancia el 20 de febrero de 2002, el recurrido solicitó autorización para que la Dra. Jeannette Roselló brindara tratamiento al menor. La peticionaria se opuso, aduciendo que la doctora Roselló era compañera de trabajo del señor Meléndez, ya que ambos eran catedráticos de la Universidad de Puerto Rico.[1]

---

[1] Respecto a esta moción el tribunal expresó: "Recomendamos a los abogados a orientar a sus clientes para que mejore su comunicación para el mejor bienestar del menor."

En su lugar, recomendó a la doctora Hamilton como terapeuta para el menor. Por su parte, el recurrido se opuso a la designación de la doctora Hamilton, alegando que como éste había evaluado al menor como perito del tribunal, "le está prohibido por los cánones de ética de su profesión servir como terapista del niño." Para poner fin a esta disputa, el foro de instancia le dio un plazo de veinte días a las partes "para escoger el profesional que se requiera para brindar servicio al menor." En su orden expresó que era "lamentable que las partes esten (sic) tan distanciadas..." Finalmente, las partes acordaron utilizar los servicios profesionales de la Dra. Bertis Delgado. El 16 de julio de 2002 inició el proceso terapéutico, en el cual han estado involucrados no sólo el menor, sino ambos padres.

El 15 de diciembre de 2003, las partes presentaron el Informe sobre Conferencia Preliminar entre Abogados, en el cual la peticionaria anunció a la doctora Delgado como testigo pericial. El señor Meléndez se opuso, argumentando que el testimonio de la doctora Delgado podría afectar la salud emocional del menor al vulnerarse la relación de confianza con su terapeuta. Adujo que la doctora Delgado debía permanecer como figura neutral, para proteger el mejor bienestar del menor. El Tribunal de Primera Instancia acogió la solicitud del padre y en resolución dictada el 6 de febrero de 2004, excluyó el testimonio de la Dra. Bertis Delgado, "por entender y determinar que su testimonio en el

juicio lesionaría la relación confidencial y confianza existente entre la doctora y la [sic] paciente-menor".

La señora Ortiz García cuestionó esta decisión ante el Tribunal de Apelaciones. Ante la premura de una solicitud de auxilio para paralizar el juicio en el foro de instancia, el Tribunal de Apelaciones dictó sentencia el 29 de abril de 2004, revocando la resolución recurrida para permitir que la doctora Delgado declarara como testigo en el juicio. Posteriormente, en reconsideración, el foro apelativo intermedio modificó su dictamen y resolvió que la doctora Delgado debía decidir, ella misma, si en el balance de todas las consideraciones, su testimonio como testigo pericial redundaría en beneficio del mejor interés del menor.[2] En específico, señaló:

> [M]odificamos nuestro anterior dictamen para resolver que el testimonio de la Dra. Bertis Delgado será imprescindible para el tribunal y entonces habrá que tomar las medidas cautelares para que la relación de confianza que el menor tiene con su terapeuta no se afecte y éste continúe recibiendo sus servicios mientras sean necesarios, independientemente a quien corresponda la custodia, **siempre y cuando** la Dra. Delgado concluya que prestar su testimonio pericial ante el Tribunal resulte más beneficioso o favorable al mejor interés del menor, que el no hacerlo.
>
> ...
>
> De optar la Dra. Delgado por no participar como perito en la causa, fundamentado ello en lo ya señalado, se le excluirá totalmente.

---

[2] El Juez Urgell Cuevas emitió voto disidente. Manifestó que a su parecer si se permitía el testimonio de la Dra. Delgado a quien se afectaría sería al menor, ya que "se menoscabaría y debilitaría la confianza depositada por ambos padres" quienes han participado en su tratamiento. También apuntó que en el caso hay otros peritos capacitados para ilustrar al tribunal.

En respuesta a dicha sentencia enmendada, el 15 de junio de 2004 la doctora Delgado le envió una carta a los abogados de las partes. En ésta explicó que no comparecería a testificar, para no violentar la relación de confianza establecida con el menor y sus padres, quienes participaban en las terapias para el tratamiento de su hijo.

El 20 de julio de 2004 la señora Ortiz García presentó ante este Tribunal una solicitud de certiorari, señalando lo siguiente como único error:

> Erró el Honorable Tribunal de Apelaciones al dejar en manos de una testigo en el caso, la Dra. Bertis Delgado, la determinación de si testifica o no en el proceso, delegando así en dicha testigo el poder de "parens patriae" que tienen los tribunales para resolver controversias relacionadas a custodia y otras de los menores, esto a pesar de reconocer, y no ser controversia al presente, la gran importancia que tiene su testimonio a la hora de determinar la adjudicación de custodia del menor David Alejandro Meléndez Ortiz García.

El 28 de julio de 2004 paralizamos el juicio y ordenamos al señor Meléndez Lugo mostrar causa por la cual no debíamos revocar la sentencia enmendada del Tribunal de Apelaciones. En su comparecencia oponiéndose a la expedición del certiorari, el señor Meléndez Lugo alega que permitir el testimonio de la doctora Delgado iría en contra del mejor bienestar del menor, ya que "el menor ha logrado comunicación efectiva y positiva con su terapista, la cual se perdería en la medida en que uno de los padres o ambos le retiren su confianza." Además, señala que solicitar a la

psicoterapeuta que testifique la coloca en un "grave conflicto ético."

Hemos evaluado con gran detenimiento el expediente de autos y el derecho aplicable y resolvemos que debemos revocar el dictamen recurrido, pero no para favorecer la posición de la peticionaria, sino para confirmar la decisión del foro de instancia prohibiendo el testimonio de la doctora Delgado. A su vez pautamos, como norma general, que un psicoterapeuta que ofrece tratamiento a un menor cuya custodia está en disputa está impedido de testificar en el pleito de custodia, en virtud de la política pública de protección al mejor bienestar de los menores y porque la comunicación entre el psicoterapeuta y el menor es privilegiada, de acuerdo a las reglas de evidencia vigentes.

II.

*A. La política de protección a los mejores intereses y el bienestar del menor*

La decisión de un tribunal en torno a la custodia de un menor "es una a la que se debe llegar luego de realizar un análisis objetivo, sereno y cuidadoso de todas las circunstancias presentes en el caso ante su consideración, teniendo **como único y principal objetivo el bienestar de los menores**". Santana v. Osorio, 116 D.P.R. 298, 301 (1985), énfasis suplido. Ello, a partir del artículo 107 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 383, que dispone, en su parte pertinente, como sigue: "En todos los casos de divorcio los hijos menores serán puestos bajo el

cuidado y la patria potestad del cónyuge que el Tribunal, en el ejercicio de su sana discreción, considere que los mejores intereses y bienestar del menor quedarán mejor servidos...". La determinación de cuáles son los mejores intereses del menor está enmarcada en el derecho que éste tiene a una correcta formación física, moral y espiritual. Nudelman v. Ferrer Bolívar, 107 D.P.R. 495, 511 (1978). Para poder determinar que un dictamen judicial redundará en el mayor bienestar del menor es preciso examinar el siguiente listado no taxativo:

> La preferencia del menor, su sexo, edad y la salud mental y física; el cariño que puede brindársele por las partes en controversia; la habilidad de las partes para satisfacer debidamente las necesidades afectivas, morales y económicas del menor; el grado de ajuste del menor al hogar, la escuela y la comunidad en que vive; la interrelación del menor con las partes, sus hermanos y otros miembros de la familia; y la salud psíquica de todas las partes. Marrero Reyes v. García Ramírez, 105 D.P.R. 90, 105 (1976).

El principio de protección a los mejores intereses y el bienestar del menor delimita los contornos del poder discrecional del tribunal en este caso. En efecto, el poder para adjudicar la custodia que se encuentra en el artículo 107 del Código Civil, supra, tiene su génesis en el ejercicio por los tribunales del poder de *parens patriae*, es decir, en el reconocido poder del Estado de proteger a los incapaces. El poder de *parens patriae* limita los derechos de otras partes, a fin de salvaguardar el bienestar de quien no puede abogar por los suyos. Es la función social y legal que el Estado asume y ejerce, en

cumplimiento de su deber de brindar protección a los sectores más débiles de la sociedad. **Es por ello que cualquier conflicto que un tribunal perciba entre intereses ajenos y el mejor interés de un menor deberá resolverse a favor del menor.**

B.    *El privilegio médico-paciente en Puerto Rico*

Los privilegios reconocidos en nuestro derecho probatorio operan como reglas de exclusión de evidencia. Explica el profesor Ernesto Chiesa que, como tales, su fundamento:

> ...es totalmente independiente, y de ordinario antagónico, de la búsqueda y consecución de la verdad, propósito cardinal del derecho probatorio. Se excluye materia privilegiada por consideraciones de política pública, para adelantar valores o intereses sociales ajenos o antagónicos a la búsqueda de la verdad, tan fundamental para la más justa adjudicación de las controversias judiciales. Ernesto L. Chiesa, *Tratado de Derecho Probatorio*, Tomo I, (1998), pág. 185.

Siendo ésta la consecuencia de los privilegios, su aceptación requiere que se cumplan cuatro condiciones fundamentales:

> 1)  la comunicación tiene que haberse originado en la confianza de que no será divulgada; 2) este elemento de confidencialidad tiene que ser esencial para mantener plena y satisfactoriamente la relación entre las partes; 3) la relación debe ser una que la comunidad considere que debe ser diligentemente promovida y 4) que el perjuicio que causaría la divulgación de la comunicación sea mayor que el beneficio obtenido por la correcta disposición del pleito. García Negrón v. Tribunal Superior, 104 D.P.R. 727, 734 (1976).

Además, como la exclusión de prueba basada en los privilegios responde a la "confidencialidad ... para proteger al titular del derecho," no los puede invocar **"cualquier persona o parte en el pleito."** Id. Ernesto L. Chiesa, *Tratado de Derecho Probatorio*, Tomo I, (1998), pág. 185, (énfasis suplido).

En torno al privilegio médico-paciente, la Regla 26 (B) de Evidencia, 32 L.P.R.A. Ap. IV R. 26(B), dispone como sigue:

> Sujeto a lo dispuesto en esta regla, el paciente, sea o no parte en el pleito o acción, tiene el privilegio de rehusar revelar, y de impedir que otro revele, una comunicación confidencial entre el paciente y el médico si el paciente o el médico razonablemente creían que la comunicación era necesaria para permitir al médico diagnosticar o ayudarle en un diagnóstico de la condición del paciente o para prescribir o dar tratamiento a la misma. **El privilegio puede ser invocado no sólo por su poseedor, el paciente, sino también por una persona autorizada para invocarlo en beneficio del paciente, o por el médico a quien se hizo la comunicación confidencial, si éste lo invoca a nombre de y para beneficio del paciente.**

Para comprender cabalmente el alcance de esta regla, es preciso estudiar varias definiciones. La primera se encuentra en la la Regla 26 (A)(1), que incluye en la definición de médico al "sicoterapista ya sea éste siquiatra o sicólogo." 32 L.P.R.A. Ap. IV R. 26(A)(1). Según la misma regla, el paciente es aquella persona "que con el único fin de obtener tratamiento médico, o un diagnóstico preliminar a dicho tratamiento, consulta a un médico o se somete a examen por éste." 32 L.P.R.A. Ap. IV R. 26(A)(2). Por otra parte, la regla también define la

comunicación confidencial, como aquella "habida entre el médico y el paciente en relación con alguna gestión profesional basada en la confianza de que ésta no será divulgada a terceras personas, salvo a aquellas que sea necesario para llevar a efecto el propósito de la comunicación." 32 L.P.R.A. Ap. IV R. 26(A)(3).

El privilegio médico-paciente está sujeto a diez excepciones enumeradas en la Regla 26(C).[3] Ninguna de estas

---

[3]   No existe privilegio bajo esta regla si:

(1)   La cuestión en controversia concierne la condición del paciente, bien en una acción para recluirle o ponerle bajo custodia por razón de alegada incapacidad mental o en una acción en la que el paciente trata de establecer su capacidad, o en una acción de daños a base de la conducta del paciente que constituye delito.

(2)   Los servicios del médico fueron solicitados u obtenidos para hacer posible o ayudar a cometer o planear la comisión de un delito o de un acto torticero.

(3)   El procedimiento es de naturaleza criminal.

(4)   El procedimiento es una acción civil para recobrar daños con motivo de conducta del paciente y se demuestra justa causa para revelar la comunicación.

(5)   El procedimiento es sobre una controversia en torno a la validez de un alegado testamento del paciente.

(6)   La controversia es entre partes que derivan sus derechos del paciente, ya sea por sucesión testado o intestada.

(7)   La comunicación es pertinente a una controversia basada en el incumplimiento de un deber que surge de la relación médico y paciente.

(8)   Se trata de una acción en que la condición del paciente constituye un elemento o factor de la reclamación o defensa del paciente, o de cualquier persona que reclama al amparo del derecho del paciente

excepciones está presente en este caso. Sin embargo, como antesala a nuestra discusión ulterior resulta pertinente señalar que la décima excepción dispone que no estará protegida la comunicación cuando ésta "es pertinente a una controversia relacionada con un **examen médico ordenado por el tribunal** a un paciente, sea el paciente parte o testigo en el pleito." 32 LPRA Ap. IV R. 26(C)(10) (énfasis suplido).

Por último, debemos tomar en consideración que: "El procedimiento judicial tiene el propósito de llegar a la verdad y en consecuencia no debe excluirse la ventilación de hechos esenciales, **a menos que con ello se vindique un interés superior de la sociedad o de la persona.** Son muy contados los casos en el que el privilegio de médico y paciente puede vindicar un interés superior a la dilucidación de la verdad en un proceso judicial." García Negrón v. Tribunal Superior, 104 D.P.R. 727, 731 (1976) (énfasis suplido). Hemos señalado que cuando los casos envuelven problemas siquiátricos, la confidencialidad es necesaria para motivar una relación franca entre médico y

o a través de éste, o como beneficiario del paciente en virtud de un contrato en que el paciente es o fue parte.

(9) El poseedor del privilegio hizo que el médico o un agente o empleado de éste declarar[a] en una acción respecto a cualquier materia que vino en conocimiento del médico, su agente o empleado por medio de la comunicación.

(10) La comunicación es pertinente a una controversia relacionada con un examen médico ordenado por el tribunal a un paciente, sea el paciente parte o testigo en el pleito. 32 L.P.R.A. Ap. IV R. 26(C).

paciente. <u>García Negrón v. Tribunal Superior</u>, 104 DPR 727, 733 (1976). En esas circunstancias, hay un verdadero interés en mantener la confidencialidad de la comunicación, que supera el interés en ventilar hechos pertinentes al litigio. Id.

En cuanto al testimonio del psicoterapeuta de un menor en casos de custodia, muchos juristas opinan que si bien puede tener gran valor en ciertos casos, este valor no supera el perjuicio causado al violentar la confidencialidad requerida por el tratamiento, mucho más cuando existe la posibilidad de contratar otros peritos para ilustrar al tribunal o para evaluar al menor para el propósito de determinar la custodia:

> Undoubtedly, a child´s therapist could provide useful information to the court, but the utility of the information may be outweighed by the child´s right to privacy. If a mature child consents to having the therapist testify or if the therapist feels strongly that he should provide information to the court, the testimony provably would be appropiate.
>
> If, however, the child and therapist believe that the privilege should be maintained (or if the child is too young to give meaningful consent and the therapist feels the privilege should be maintained), courts should respect the child´s right to confidentiality. As with mental health issues concerning the parent, **if an evaluation of the child is needed, an evaluation could be done specifically for trial without disturbing the child´s confidential relationship with the therapist.** Jeff Atkinson, *Modern Child Custody Practice*, Second Edition, Volume 2, §12-38, (1998), énfasis suplido.

Una solución propuesta es la de distinguir entre el psicoterapeuta que examina al menor por orden del tribunal y el psicoterapeuta contratado privadamente para propósitos

de tratamiento. Véase, Daniel W. Shuman, *Psychiatric and Psychological Evidence*, Second Edition, §13.04, (1995). En la primera situación no existe el privilegio, puesto que el propósito del examen es, precisamente, informar al tribunal, no brindar tratamiento ni establecer una relación de confidencialidad. Por el contrario, el privilegio se activa cuando el sicólogo o siquiatra es contratado privadamente para brindar tratamiento.

C.   *Consideraciones éticas que rigen a los psicoterapeutas en Puerto Rico y Estados Unidos*

Al abordar el tema de la confidencialidad de la comunicación entre cliente y psicoterapeuta, el Código de Ética de la Asociación de Psicología de Puerto Rico establece en su Principio 6 lo siguiente:

> Salvaguardar la información que se ha obtenido sobre un individuo al llevar a cabo las tareas de enseñanza práctica profesional o investigación, es una de las obligaciones principales de un psicólogo. Dicha información no se le comunica a otros excepto en casos especiales y atendiendo a las siguientes guías:
>
> a.   Toda comunicación profesional es estrictamente confidencial.
>
> b.   El psicólogo que le pide a un individuo que revele información personal durante el transcurso de entrevistas, pruebas o evaluación, o que permite que tal información le sea comunicada, lo hace solamente después de asegurarse que la persona está completamente consciente de los propósitos de la entrevista, prueba o evaluación así como de la utilización que se le dará a dicha información. El psicólogo es responsable de informar al cliente aquellas situaciones generales en que no se compromete a mantener confidencialidad.

(...)

d. La información obtenida a través de consultoría, psicoterapia, evaluación psicológica o psicométrica se discute solamente con propósitos profesionales y sólo con aquellas personas a quiénes realmente les concierne el caso previa autorización del cliente. Los informes escritos y orales deben incluir solamente datos relevantes a los propósitos de la evaluación.

(...)

h. El psicólogo toma medidas para mantener la confidencialidad en la conservación y disposición final de los documentos confidenciales.

Según las *Guías Profesionales para la Evaluación Psicológica*, propuestas en marzo de 1991 por la Asociación de Psicólogos de Puerto Rico: "El evaluador debe tratar de evitar el desempeño simultáneo de roles que podrían resultar conflictivos." De hecho, el que un psicoterapeuta tratante actúe simultánemente, como perito, como sugiere la peticionaria, puede ser anti-ético. Víctor J. Lladó, MD F.A.P.A., *Brújula para Salud Mental*, pág. 255 (2000). Según señala el doctor Lladó: "Los issues [sic] más directamente relevantes para la corte no necesariamente son los issues [sic] más relevantes para tratamiento, y esos issues [sic] relevantes para la corte tienen que ser evaluados por el psiquiatra forense." Id. en la pág. 258. En específico, este autor ha indicado que:

Una de las dificultades mayores que todavía persiste en el área de la ciencia de la conducta en relación [sic] a los tribunales tiene que ver con un viejo hábito de muchos abogados litigantes que tratan de utilizar al psiquiatra o psicólogo que está tratando al demandante como perito experto en corte. Desde 1986 estas prácticas se ha

[sic] considerados [sic] no deseables desde el punto vista ético por la Academia Americana de Psiquiatría y la Ley, la organización nacional más prestigiosa en el campo de la psiquiatria forense. Victor J. Lladó, MD F.A.P.A., *Brújula para Salud Mental*, pág. 383 (2000).

La Asociación Americana de Psicología también ha cuestionado el rol dual terapista/evaluador, en unas guías interpretativas tituladas *Guidelines for Child Custody Evaluations in Divorce Proceedings*. En éstas se indica que un psicólogo debe evitar llevar a cabo evaluaciones de custodia en aquellos casos en los que haya desempeñado un rol terapéutico para el niño o su familia inmediata, o en los que su envolvimiento pueda comprometer su objetividad. Advierten las guías, además, que el psicólogo debe ser conciente del impacto que testificar en esas circunstancias puede tener sobre la relación terapéutica.[4]

El Código de Ética de la Asociación Americana de Psicología trata también el tema de la confidencialidad de la información obtenida durante el tratamiento. En específico, dispone en su sección 4.01 que los psicólogos tienen la obligación primordial de proteger información confidencial y tomar precauciones razonables hacia ese fin,

---

[4] "Psychologists generally avoid conducting a child custody evaluation in a case in which the psychologist served in a therapeutic role for the child or his or her immediate family or has had other involvement that may compromise the psychologist´s objectivity…". A renglón seguido, las guías indican lo siguiente: "A psychologist asked to testify regarding a therapy client who is involved in a child custody case is aware of the limitations and possible biases inherent in such a role and the possible impact on the ongoing therapeutic relationship." *Guidelines for Child Custody Evaluations in Divorce Proceedings*, Vol. 49, No. 7, págs. 677-680 (1994).

dentro de lo establecido por la ley, las reglas institucionales o las relaciones profesionales y científicas.[5]

El que un psicoterapeuta que brinda tratamiento privado a un menor se involucre en el proceso judicial también puede contaminar la relación terapéutica y socavar la relación de confianza que ésta requiere. Explica el doctor Lladó que "cuando el psicoterapeuta se adentra en el rol del perito ... tendrá ... que exponerse a revelar lo que ocurre durante las sesiones." Por eso, la confidencialidad, que es "un ingrediente indispensable al desarrollo de la confianza" peligra una vez el psicoterapeuta "se adentra ya en el territorio más público de los tribunales." Víctor J. Lladó, supra, en la pág. 257. La probabilidad de violar la confidencialidad también puede resultar en la violación de un compromiso ético del psicoterapeuta con su paciente. Melvin G. Goldzband, *Custody Cases and Expert Witnesses: A Manual for Attorneys*, Second Edition, pág. 53, (1988). Ahora bien, a pesar de las normas éticas que le impiden al psicoterapeuta violar un acuerdo de confidencialidad, el privilegio de no revelar la información es del paciente y no del psicoterapeuta, a quien las reglas no reconocen ningún privilegio. Id. Por tanto, si el menor renuncia

---

[5] "Psychologists have a primary obligation and take reasonable precautions to protect confidential information obtained through or stored in any medium, recognizing that the extent and limits of confidentiality may be regulated by law or established by institutional rules or professional or scientific relationship." American Psychological Association, *Ethical Principles of Psychologists and Code of Conduct*, sec. 4.01, (2002).

válidamente al privilegio, el psicoterapeuta está obligado a testificar en el juicio.[6]

## III.

Decidir lo que responde al mejor bienestar del menor entraña una gran responsabilidad.[7] Tomando en consideración los hechos del presente caso pasamos a resolver, a la luz de nuestro derecho probatorio y nuestra política pública a favor de los mejores intereses y el bienestar del menor.

La peticionaria alega que el recurrido no ha cuestionado "la importancia y relevancia del testimonio de la doctora Delgado." Ello, sin embargo, no es necesario, pues las reglas evidenciarias sobre privilegios presuponen la pertinencia del testimonio cuestionado. Se trata, precisamente, de normas para excluir prueba no obstante su pertinencia, exclusión que obedece a razones extrínsecas que tienen que ver con la política pública. Por tanto, no es necesario que el recurrido cuestione la pertinencia del testimonio de la doctora Delgado. La peticionaria también

---

[6] El beneficiado por un privilegio puede, desde luego, renunciarlo. Cuando se trata de un menor, algunas jurisdicciones permiten al padre o a la madre renunciar al privilegio en beneficio del menor, particularmente cuando se alega que el otro padre ha maltratado al niño. Sandra Morgan Little, *Child Custody and Visitation Law and Practice*, Volume 4, §20.06 [6], (2004). Esto, sin embargo, puede traer conflictos en cuanto a cuál de los padres puede renunciar al privilegio. Por esa razón, algunos tribunales designan un defensor judicial para tomar la decisión en interés del menor. Id.

[7] Para una discusión a fondo de la responsabilidad de los tribunales cuando se enfrentan al criterio del "mejor bienestar del menor" véase Robert H. Mnooking, *In the Interest of Children, Advocacy, Law Reform, and Public Policy*, págs. 16-18, (1985).

alega que la doctora Delgado es una perito de ocurrencia, ya que ha adquirido conocimientos sobre asuntos esenciales de la controversia; aduce también que la información que ella posee es irremplazable.[8] No nos convencen estos argumentos, pues lo que nos compete decidir en este caso no es si el testimonio de la doctora Delgado es pertinente o valioso, sino si está sujeto a exclusión bajo el privilegio médico-paciente y el principio del mejor bienestar del menor. Coincidimos con el recurrido en cuanto alega que permitir testificar a la doctora Delgado iría en contra del bienestar del menor, ya que "el menor ha logrado comunicación efectiva y positiva con su terapista, la cual se perdería en la medida en que uno de los padres o ambos le retiren su confianza." Argumenta también el recurrido que solicitar a la psicoterapeuta que testifique coloca a ésta en un "grave conflicto ético." Sin embargo, esto, aunque fuera cierto, no nos obliga, ya que debemos evaluar la controversia desde la perspectiva del menor, quien es el paciente y poseedor del privilegio.

En la carta que sometió al foro de instancia para cumplir con el dictamen del Tribunal de Apelaciones, la doctora Delgado expone varios argumentos pertinentes a la

---

[8] A estos fines cita nuestra opinión en San Lorenzo Trading v. Hernández, 114 D.P.R. 704, 718 (1983), donde expusimos que los peritos de ocurrencia "son aquellos que de antemano han tenido conocimiento extrajudicial de los hechos a través de observaciones directas o por participación en eventos subsiguientemente pertinentes a la litigación. Pueden haber sido remunerados o no en aquel momento. Son personas que han tenido percepción inmediata de los hechos y, como tales, poseen información irreemplazable."

solución final de la presente controversia. En primer lugar, indica que informó a la peticionaria, desde un principio, que "no aceptaba casos que tuvieran procesos en los tribunales" y que ésta le aseguró que la solicitud era "exclusivamente para servicios terapéuticos y que cada una de las partes tenía peritos en psicología contratados para los procesos en el Tribunal, por lo que yo no tendría que involucrarme en el proceso legal." [9] También explica la doctora Delgado en su carta que ambos padres han estado involucrados en el proceso terapéutico del menor. Añade que: "Debido a los acuerdos terapéuticos que se hicieron con ambos padres del niño, me veo imposibilitada de asistir al Tribunal o rendir un informe si uno de los padres se opone."

Según la doctora Delgado, su posición de negarse a asistir a los procesos judiciales se fundamenta en que "el ambiente hostil que en estos [sic] permea es contrario al quehacer terapéutico" y en que su comparecencia al tribunal le imposibilitaría "poder continuar con la relación terapéutica, ya que existe la probabilidad de que alguno de los padres pueda sentirse incómodo con la información

---

[9] En el presente caso no hay una escasez de testimonio pericial, sino todo lo contrario, pues otros siete peritos han evaluado a las partes y al menor y rendido sendos informes y no tienen ningún impedimento para testificar. Específicamente, el recurrido anunció a la Dra. Carol Romey, la Dra. Lucca Irizarry y la trabajadora social Sra. Sylvia Burgos. La peticionaria anunció al Dr. José H. Rodríguez y a la trabajadora social Estela Rivas Nina. Además, el Tribunal de Primera Instancia nombró dos peritos, la trabajadora social Wanda Bravo y la psicóloga, Dra. Hamilton.

vertida y decida retirarse del proceso terapéutico, lo que sería perjudicial para el menor." Por último, admite que posee "información sobre este caso que podría ser de interés al Tribunal" pero entiende "que esta información no es indispensable" para que el tribunal pueda tomar una decisión en beneficio del menor, más aún cuando hay otros profesionales en el área de la conducta humana que pueden brindar información relevante. Además, señala que el menor ha logrado una mejoría debido a su tratamiento.

La peticionaria plantea que el Tribunal de Apelaciones erró porque delegó en la doctora Delgado determinar si testificaba en el proceso. Expone la peticionara que la doctora Delgado era una "testigo en el caso", lo cual es patentemente erróneo puesto que la relación de ésta con las partes siempre ha sido la de psicoterapeuta del menor. Sin embargo, el foro apelativo erró, pues la decisión de si habría de testificar no le correspondía a la doctora Delgado, no obstante la utilidad de su explicación sobre los conflictos inherentes a su testimonio. Se trataba de una decisión claramente judicial y el foro apelativo erró al delegarla. Además, el testimonio impugnado está protegido por un privilegio médico-paciente que ha sido reclamado a nombre del menor D.A. y son los tribunales los llamados a resolver las controversias relacionadas a comunicaciones privilegiadas.

Resolvemos que cuando se llama al psicoterapeuta del menor, a testificar en el pleito sobre su custodia, el

tribunal debe determinar, en primer lugar, si dicho profesional fue nombrado por el tribunal o contratado por las partes para evaluar al menor **con el fin de testificar en el juicio**, o si fue contratado privadamente **para ofrecer tratamiento al menor.** En el primer caso, no existe la expectativa de confidencialidad, puesto que la evaluación se hace con el propósito de que el perito emita una opinión ante el foro sentenciador. Esa comunicación no es privilegiada y en esas condiciones, el testimonio del psicoterapeuta no resulta detrimental a los mejores intereses del menor. Además, si el perito es designado por el tribunal, su testimonio no es privilegiado de acuerdo a la décima excepción establecida en la Regla 26(C)(10), supra.

Ahora bien, si el perito es contratado privadamente con el fin de brindar tratamiento al menor, se establece una relación protegida estatutariamente por la Regla 26 de Evidencia y surge el privilegio médico-paciente en su vertiente psicoterapeuta-paciente. Este privilegio es exclusivo del menor que recibe el tratamiento y no del psicoterapeuta que lo atiende ni de sus padres. [10]

---

[10] Es usual que las partes contraten peritos para que ofrezcan su opinión cuando se litiga en torno a la custodia de un menor. Ello, claro está, con el propósito de lograr que el tribunal favorezca sus respectivas posiciones. Sin embargo, para aplicar el principio o criterio de los mejores intereses del menor no se requiere testimonio pericial , contrario a cuando se alega incapacidad mental o locura. Daniel W. Shuman, *Psychiatric and Psychological Evidence*, Second Edition, §13.04, (1995).

Nuestra política pública, que ampara a los menores y persigue que las decisiones judiciales aseguren su bienestar, nos exige vindicar este interés superior y determinar que el bienestar de los menores nos requiere proteger la confidencialidad de su tratamiento psicológico privado. Con ello, promovemos que los padres que entiendan que sus hijos necesitan ayuda psicoterapéutica la soliciten, para que los menores puedan afrontar exitosamente la separación de sus padres y el cambio que esto representa en sus vidas.

El privilegio médico-paciente, "puede ser invocado no sólo por su poseedor, **el paciente**, sino también por **una persona autorizada** para invocarlo en beneficio del paciente, o por **el médico** a quien se hizo la comunicación confidencial, si éste lo invoca a nombre de y para beneficio del paciente." Regla 26(B) de Evidencia, supra, énfasis nuestro. Por tanto, en el caso que nos ocupa, tratándose de un menor, pueden invocar el privilegio el psicoterapeuta y los padres con custodia del menor, por ser "personas autorizadas" para invocar el privilegio a nombre de éste.

Recordemos, no obstante, que si bien el psicoterapeuta puede invocar el privilegio a nombre de su paciente, no tiene el poder de decidir si testifica o no. Debemos tener presente también que aunque la intervención de peritos puede arrojar luz sobre asuntos medulares en los pleitos de

custodia, su testimonio no es el factor determinante. Los pleitos de custodia no deben convertirse en una batalla entre los peritos de ambas partes, con la consecuencia de someter al menor a numerosas intervenciones.[11] Por el contrario, la responsabilidad y la capacidad para adjudicar un pleito de custodia descansa, no en los peritos, sino en los tribunales.

IV.

En apoyo a nuestra política pública de protección a los mejores intereses del menor, debe reconocerse que el privilegio médico-paciente impide el testimonio de la doctora Delgado en este caso. No están presentes en esta controversia ninguna de las excepciones establecidas en la Regla 26(C) y el privilegio lo han invocado el padre del menor y su psicoterapeuta. Al oponerse a que se violente la confidencialidad de la relación de su hijo con la psicoerapeuta, lo que ha hecho el recurrido, señor Meléndez Lugo, es reclamar este privilegio a nombre de su hijo. De igual forma, en su carta la doctora Delgado también reclama la confidencialidad del tratamiento en beneficio de su paciente. Por tanto, amparados en nuestro poder de *parens patriae* determinamos que en este caso se ha invocado correctamente el privilegio-médico paciente en su vertiente de psicoterapeuta-cliente. Concluimos, además, que el mejor

---

[11] Señalamos, sin embargo, que cuando se alegue que el menor ha estado expuesto a abuso sexual o maltrato psicológico o físico, pueden existir otras consideraciones que los tribunales deben evaluar para salvaguardar el bienestar del menor.

interés del menor radica en prohibir el testimonio de la doctora Delgado. No podemos permitir que el avance emocional logrado por el menor gracias a la terapia recibida por la doctora Delgado se vea empañado por una solicitud inmeritoria para que ésta asuma el rol de perito de ocurrencia.[12]

La decisión que hoy tomamos no es a favor ni en contra de ninguna de las partes, como tampoco de la psicoterapeuta del menor, sino en beneficio de éste, que desde los tres años está en el centro de una contienda emocional y judicial. Ese es nuestro único norte y debe serlo también de las partes.

Por todo lo antes expuesto, expedimos el auto para revocar la sentencia enmendada emitida por el foro apelativo intermedio y confirmamos la decisión del foro de instancia, a los fines de excluir el testimonio de la doctora Delgado, psicoterapeuta del menor.

Se dictará sentencia de conformidad.

---

[12] No estamos ajenos a que los abogados pueden interesar el testimonio del psicoterapeuta que trata al menor por razones económicas. Víctor J. Lladó, supra, en las págs. 258-259. De esta forma, el psicoterapeuta se convertiría en perito de ocurrencia y éstos, como regla general no reciben compensación por su testimonio en corte, sino que se consideran testigos ordinarios para todos los efectos. San Lorenzo Trading v. Hernndez, 114 D.P.R. 704, 718 (1983). Esta realidad podría influir igualmente en la posición de los psicoterapeutas que se niegan a testificar en estas circunstancias. Con nuestra decisión evitamos que se convierta en un patrón la práctica de contratar privadamente a un psicoterapeuta para brindar tratamiento al menor, para luego llamarlo a testificar como perito de ocurrencia. Véase, Víctor J. Lladó, supra, en las págs. 385-386.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Leila Ortiz García

Peticionaria

v.

Héctor Meléndez Lugo                         Certiorari
                           CC-2004-648
Recurrido


SENTENCIA


En San Juan, Puerto Rico, a 3 de marzo de 2005.


Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente Sentencia, revocamos la sentencia enmendada del Tribunal de Apelaciones y se confirma la decisión del foro de instancia, a los fines de excluir el testimonio de la Dra. Bertis Delgado.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo.


Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo