ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL IV

| VILLAS MAYAGUEZ LTD y OTROS<br><br>Peticionaria<br><br>v.<br><br>MAPFRE PRAICO INSURANCE COMPANY<br><br>Recurrida | **TA2026CE00229** | *CERTIORARI* procedente del Tribunal de Primera Instancia Sala Superior de Mayagüez<br><br>Civil Núm.: MZ2019CV01514<br><br>Sobre: Daños, Seguros – Incumplimiento Aseguradoras Huracanes Irma/María, Sentencia Declaratoria |

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Bonilla Ortiz y la Jueza Martínez Cordero.

Bonilla Ortiz, Juez Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico a 11 de marzo de 2026.

Comparecen ante nos Villas Mayagüez LTD (Villas Mayagüez), Almaco Capital Corp., Attenure Holdings Trust 2 y HRH Property Holdings LLC (en conjunto, "parte peticionaria") y nos solicitan que revisemos una *Orden* emitida por el Tribunal de Primera Instancia, Sala Superior de Mayagüez, notificada el 22 de enero de 2026. Mediante el referido dictamen, el foro primario decretó por terminado el descubrimiento de prueba.

Por los fundamentos que expondremos a continuación, **DENEGAMOS** el recurso discrecional solicitado.

## I.

El 5 de septiembre de 2019, la parte peticionaria presentó una *Demanda* en contra de MAPFRE Praico Insurance Company (MAPFRE o "parte recurrida") sobre sentencia declaratoria, daños, incumplimiento de

contrato, dolo y mala fe.[1] En esta, solicitaron el resarcimiento por los daños que ocasionó el paso de Huracán María por Puerto Rico. No obstante, sostuvieron que MAPFRE se negó a reconocer el alcance del contrato y valor de los daños a la propiedad.

El 20 de septiembre de 2021, MAPFRE presentó su *Contestación a Demanda*.[2] En esencia, negó la mayoría de las alegaciones y presentó sus defensas afirmativas. Asimismo, sostuvo que la parte peticionaria incumplió con las obligaciones contractuales de la póliza en controversia. Además, alegó que realizaron una cesión indebida de los derechos de la póliza sin su consentimiento expreso. Por ello, resaltó que dicho incumplimiento lo eximía de sus obligaciones bajo la póliza.

Luego de varias incidencias procesales, el 30 de enero de 2023, la parte peticionaria presentó una *Moción Suplementaria Sobre el Estado de Salud del Sr. Michael Johnson y Solicitud de Sustitución de Perito*.[3] Junto con la moción, presentaron un *Certificado Médico* expedido por el Dr. Todd Coulter, en el cual indicaba que el señor Johnson no estaría disponible para viajar, trabajar, ni testificar como perito en el caso. Por lo que, solicitaron la sustitución del perito.

En desacuerdo, el 21 de febrero de 2023, MAPFRE presentó una *Moción en Oposición a Solicitud de Sustitución de Perito*.[4] Arguyó que, la situación de

---

[1] *Demanda*, entrada núm. 1 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).
[2] *Contestación a Demanda*, entrada núm. 51 en SUMAC.
[3] *Moción Suplementaria sobre el Estado de Salud del Sr. Michael Johnson y Solicitud de Sustitución de Perito*, entrada núm. 91 en SUMAC.
[4] *Moción en Oposición a Solicitud de Sustitución de Perito*, entrada núm. 92 en SUMAC.

salud del señor Johnson no era un asunto sorpresivo ni reciente, por lo que, la parte peticionara tuvo tiempo suficiente para solicitar su sustitución. Así pues, reclamó que la parte peticionaria no demostró justa causa, ni cumplió con la temporalidad en la que debió presentar la solicitud de sustitución de perito.

El 13 de marzo de 2023, la parte peticionaria presentó una *Réplica a "Moción en Oposición a Solicitud de Sustitución de Perito"*.[5] Resaltó que, presentaron una solicitud con justa causa, y en una etapa del procedimiento idónea, entiéndase a tiempo y con el descubrimiento de prueba activo y sin fecha fijada para su culminación.

Evaluadas las mociones, el 27 de marzo de 2023, el foro primario notificó una *Resolución*.[6] Mediante la cual, determinó lo siguiente:

> Estando sometida la solicitud de sustitución de perito promovida por la parte demandante con los escritos presentados, resolvemos que por los fundamentos expuestos por la parte demandante el Tribunal determina que el perito de la parte demandante Sr. Michael Johnson, es un testigo no disponible por razones de salud acreditadas por la parte demandante mediante declaración jurada del perito y certificado médico. La parte demandante además acreditó que el Informe del Perito ahora testigo no disponible por tanto, se autoriza que la parte demandante lo sustituya por otro perito. Se toma conocimiento de que la parte demandante desde el 17 de junio de 2022. La parte demandante le notificó el Informe de su perito a Mapfre Praico Insurance Company por correo electrónico por lo que previo a sobrevenir la causa que resulta en que el perito se haya tornado perito no disponible no descarta el Informe rendido y notificado.

---

[5] *Réplica a "Moción en Oposición a Solicitud de Sustitución de Perito"*, entrada núm. 94 en SUMAC.
[6] *Resolución*, entrada núm. 96 en SUMAC.

El 9 de agosto de 2023, la parte peticionaria presentó una *Moción en Cumplimiento de Orden y Notificación de Perito Sustituto*.[7] Expresó que, habían contratado al Ing. Raúl Gaya Nigaglioni como perito en estimación de daños, en sustitución del señor Johnson.

El 31 de octubre de 2023, las partes de epígrafe presentaron una *Moción Conjunta Informativa sobre Conversaciones Transaccionales y en Solicitud de Paralización de los Procedimientos*.[8] En esta, solicitaron un término no menor de setenta y cinco (75) días para informarle al foro primario el estado o resultado del acuerdo. Por lo que, las partes acordaron suspender temporalmente los procedimientos relacionados al descubrimiento de prueba.

Posteriormente, el 16 de septiembre de 2024, MAPFRE presentó una *Solicitud de Orden Protectora*.[9] En síntesis, mencionó que la parte peticionaria le remitió un *Aviso de Toma de Deposición*, para que éstos designaran a un funcionario con conocimiento a testificar sobre los temas allí indicados. No obstante, alegan que luego de llegar a ciertos acuerdos sobre algunos temas, necesitaban intervención del foro primario sobre los siguientes temas:

      a. Documentos relacionados con el reaseguro de la Reclamación y todas las comunicaciones con los reaseguradores relacionados con la Reclamación.

      b. Cómo MAPFRE hace las reservas para la Reclamación, incluyendo quién las hace, quién está involucrado y qué factores toman en consideración estos individuos que realizan estas reservas.

---

[7] *Moción en Cumplimiento de Orden y Notificación de Perito Sustituto*, entrada núm. 112 en SUMAC.
[8] *Moción Conjunta Informativa sobre Conversaciones Transaccionales y en Solicitud de Paralización de los Procedimientos*, entrada núm. 119 en SUMAC.
[9] *Solicitud de Orden Protectora*, entrada núm. 131 en SUMAC.

   c. Todos los reaseguros relacionados con la Póliza y cualquier otro seguro de propiedad expedido por MAPFRE a Villas de Mayagüez entre el 2016 y el presente.

   d. Todas las comunicaciones con los reaseguradores relacionados con la Reclamación, la Póliza o cualquier otra póliza de propiedad que MAPFRE le expidió a Villas de Mayagüez entre el 2016 y el presente.

Así pues, solicitaron una orden de protección para que no se permitiera el descubrimiento de dichos temas.

El 7 de octubre de 2024, el foro recurrido notificó una *Orden y Resolución Sobre Orden Protectora*, en la cual declaró *Ha Lugar* la solicitud instada por MAPFRE.[10]

El 6 de noviembre de 2024, la parte peticionaria presentó un recurso de *certiorari* ante el Tribunal de Apelaciones.[11] El 10 de abril de 2025, el Foro Apelativo emitió una *Sentencia*, en la cual expidió y revocó la resolución recurrida. Por consiguiente, permitió el descubrimiento de prueba sobre la reserva y el proceso de reaseguro.[12]

Luego de varios trámites procesales, el 4 de noviembre de 2025, el foro primario notificó una *Orden*, en la cual ordenó a las partes a informar el estado de los trabajos de descubrimiento de prueba.[13]

Así las cosas, el 14 de noviembre de 2025, MAPFRE presentó una *Moción Informativa en Cumplimiento de Orden*.[14] Mediante esta, informó que había terminado su descubrimiento de prueba.

Por su parte, el 19 de noviembre de 2025, la parte peticionaria presentó su *Moción Informativa y en*

---

[10] *Orden y Resolución Sobre Orden Protectora*, entrada núm. 137 en SUMAC.
[11] *Moción Informativa sobre Petición de Certiorari presentada ante el Tribunal de Apelaciones*, entrada núm. 145 en SUMAC.
[12] *Sentencia*, entrada núm. 164 en SUMAC.
[13] *Orden*, entrada núm. 178 en SUMAC.
[14] *Moción Informativa en Cumplimiento de Orden*, entrada núm. 179 en SUMAC.

*Cumplimento de Orden (SUMAC 178).*[15] Mencionó que, conforme a lo ordenado por el Tribunal de Apelaciones, le tomarían la deposición al Representante Corporativo de MAPFRE sobre los temas que el Ing. Omar Acevedo Avilés testificó no tener conocimiento. A su vez, informó que le tomaría una deposición al Ing. Héctor Rodríguez. Finalmente, anunció como testigos a las siguientes personas: (1) Sr. Daniel Massó, ajustador público del asegurado y quien tiene conocimiento de la reclamación; (2) Sr. Luis E. Sepúlveda, productor de seguros del asegurado, quien también tiene conocimiento de las gestiones realizadas y la reclamación presentada por el asegurado ante la parte recurrida.

El 21 de noviembre de 2025, MAPFRE presentó una *Moción Suplementaria sobre Estatus del Descubrimiento de Prueba.*[16] Arguyó que, tomaría las deposiciones de los nuevos testigos, para las cuales ya se ofrecieron fechas a la parte peticionaria.

El 30 de diciembre de 2025, MAPFRE presentó una *Solicitud de Exclusión de Perito Anunciado de Forma Tardía por la Parte Demandante.*[17] Mediante esta, reclamó que la parte peticionaria les notificó que estaría presentando un perito adicional. Sin embargo, sostuvo que dicho anuncio era tardío y no debía permitirse. Recalcó que, el caso había sido presentado hace más de seis (6) años, teniendo la parte peticionaria amplia oportunidad para contratar y anunciar a cuantos peritos interesara. Por lo que, era totalmente injustificado

---

[15] *Moción Informativa y en Cumplimento de Orden (SUMAC 178)*, entrada núm. 181 en SUMAC.
[16] *Moción Suplementaria sobre Estatus del Descubrimiento de Prueba*, entrada núm. 182 en SUMAC.
[17] *Solicitud de Exclusión de Perito Anunciado de Forma Tardía por la Parte Demandante*, entrada núm. 183 en SUMAC.

que esperara a la etapa final del descubrimiento de prueba para anunciar un nuevo perito. Finalmente expresó que, el perito adicional contaba con la misma profesión que el actual perito, por lo que, se duplicaría y redundaría el testimonio pericial.

El 14 de enero de 2026, la parte peticionaria presentó su *Oposición a "Solicitud de Exclusión de Perito Anunciado de Forma Tardía por la Parte Demandante"*.[18] Alegó que, el descubrimiento de prueba no había terminado, dado que, el foro primario no había señalado una fecha límite para su culminación y no había fecha para juicio. Asimismo, sostuvo que excluir al perito (Sr. Héctor Martínez) constituía una sanción extrema e injustificada. Además, que su testimonio no sería acumulativo.

El 22 de enero de 2026, el foro primario notificó una *Orden Cierre de Descubrimiento de Prueba*, mediante la cual expresó lo siguiente:[19]

> En cuanto al descubrimiento de prueba instruimos que con las deposiciones anunciadas por la parte demandante al Tribunal el 19 de noviembre de 2025 se decreta terminado el anuncio de prueba por las partes. Con excepción de las deposiciones de los testigos anunciados por la parte demandante el 19 de noviembre de 2025, no resta descubrimiento alguno adicional que realizar. Las partes luego deberán preparar un plan de trabajo para la etapa de Conferencia Con Antelación al Juicio y Juicio. Por tanto, no se autoriza la inclusión de nueva prueba por las partes demandante y demandada.

Posteriormente, el 3 de febrero de 2026, el foro recurrido notificó una *Orden – Cumplimiento de Orden*. En esta, indicó las fechas de las deposiciones restantes

---

[18] *Oposición a "Solicitud de Exclusión de Perito Anunciado de Forma Tardía por la Parte Demandante"*, entrada núm. 184 en SUMAC.
[19] *Orden Cierre de Descubrimiento de Prueba*, entrada núm. 186 en SUMAC.

e informó que una vez terminadas las deposiciones las partes debían preparar un plan de trabajo para la calendarización de la Conferencia Con Antelación al Juicio y el Juicio. Por ello, no autorizaba la inclusión de nueva prueba por las partes.

Inconforme, el 23 de febrero de 2026, la parte peticionaria presentó el recurso de epígrafe en el que hizo el siguiente señalamiento de error:

> PRIMER ERROR: ERRÓ EL TPI AL EXCLUIR UN PERITO ESENCIAL DE LOS PETICIONARIOS, A PESAR DE ESTE HABERSE ANUNCIADO ANTES DE CULMINAR EL DESCUBRIMIENTO DE PRUEBA.

El 24 de febrero de 2026, emitimos una *Resolución* en la cual le concedimos a la parte recurrida el término de quince (15) días para que presentara su alegato en oposición.

Así las cosas, el 9 de marzo de 2026, la parte recurrida presentó su *Oposición a Expedición de Certiorari y Alegato de Mapfre*.

Contando con la comparecencia de las partes, procedemos a atender el recurso de epígrafe.

**II.**

**-A-**

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una decisión de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 846-847 (2023); *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021); *800 Ponce de León v. AIG,* 205 DPR 163, 174-175 (2020). Ahora bien, tal discreción no opera en lo abstracto. Con respecto a lo anterior y para revisar los dictámenes interlocutorios

del Tribunal de Primera Instancia, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, dispone, en su parte pertinente, lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 de este apéndice o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.
>
> […].

Según se desprende de la citada Regla, este foro apelativo intermedio podrá revisar órdenes interlocutorias discrecionalmente, cuando se recurre de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia o que revistan interés público, o en aquellas circunstancias en las que revisar el dictamen evitaría un irremediable fracaso de la justicia, entre otras contadas excepciones. *Mun. De Caguas v. JRO Construction*, 201 DPR 703, 710-711 (2019).

Luego de auscultar si el recurso discrecional cumple con las disposiciones de la Regla 52.1 de Procedimiento Civil, *supra*, el tribunal procederá a evaluar el recurso a la luz de la Regla 40 del Reglamento

del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA,* 2025 TSPR 42. La mencionada Regla expone los criterios que este Foro deberá considerar para ejercer sabia y prudentemente su decisión de atender o no las controversias ante sí. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96-97 (2008); *Rivera et al. v. Arcos Dorados et al.*, supra, pág. 209; *Pueblo v. Rivera Montalvo*, 205 DPR 352, 372 (2020).

Así, la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, funge como complemento a la Regla 52.1 de Procedimiento Civil, supra. *Torres González v. Zaragoza Meléndez,* supra. La precitada Regla dispone lo siguiente:

> El [T]ribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la

justicia. *BPPR v. SLG Gómez-López,* 213 DPR 314, 337 (2023).

Sin embargo, ninguno de los mencionados criterios es determinante, por sí solo, para este ejercicio y no constituye una lista exhaustiva. *García v. Padró*, 165 DPR 324, 335 (2005). Por lo que, de los factores esbozados "se deduce que el foro apelativo intermedio evaluará tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada; esto, para determinar si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio." *Torres Martínez v. Torres Ghigliotty*, supra, pág. 97.

Nuestro Tribunal Supremo también ha expresado que, de ordinario, el tribunal revisor "no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial.*" WMM, PFM et al. v. Colegio,* 211 DPR 871, 902-903 (2023*); Zorniak Air Servs. v. Cessna Aircraft Co.,* 132 DPR 170, 181 (1992), citando a *Lluch v. España Service Sta.,* 117 DPR 729, 745 (1986). Véase, además: *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

-B-

El procedimiento para llevar a cabo el descubrimiento de prueba está regido por las Reglas de Procedimiento Civil de Puerto Rico, 32 LPRA Ap. V, R 23.1 (2009). El descubrimiento de prueba es "la médula

del esfuerzo de destruir de una vez y para siempre la deportiva teoría de justicia que tanta mina la fe del pueblo en el sistema judicial." *McNeil Healthcare, LLC v. Mun. Las Piedras II*, 206 DPR 659, 672 (2021); *Rivera et al. v. Arcos Dorados et al.,* supra; *Alvarado v. Alemany*, 157 DPR 672, 682 (2002). El descubrimiento de prueba es el mecanismo utilizado por las partes para "obtener hechos, título, documentos u otras cosas que están en poder del demandado o que son de su exclusivo conocimiento y que son necesarias […] para hacer valer sus derechos."

Los foros primarios gozan de amplia discreción para regular el descubrimiento de prueba, por lo que los foros apelativos no deben intervenir con dicha discreción, salvo que medie prejuicio, parcialidad o error manifiesto en la aplicación de una norma procesal o sustantiva. *Consejo de Titulares v. Triple S*, 2025 TSPR 82, 216 DPR ___ (2025); *Torres González v. Zaragoza Meléndez,* supra; *Rivera y otros v. Bco. Popular,* supra (2000). Este criterio también concierne a la intervención de los foros apelativos con las determinaciones interlocutorias de los tribunales de primera instancia. *McNeil Healthcare v. Mun. Las Piedras II*, supra, pág. 672; *Meléndez v. Caribbean Int'l. News*, 151 DPR 649, 664 (2000).

De la misma forma, en términos generales, el propósito del descubrimiento de prueba es: (1) delimitar las controversias; (2) facilitar la consecución de evidencia; (3) evitar las sorpresas en el juicio; (4) facilitar la búsqueda de la verdad, y (5) perpetuar la prueba. Véase, R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta ed., San Juan,

Ed. LexisNexis, 2017, Sec. 2802, págs. 333-334. Es por ello, que nuestro Tribunal Supremo ha reiterado que el alcance del descubrimiento de prueba es amplio y liberal. *Consejo de Titulares v. Triple S*, supra; *Torres González v. Zaragoza Meléndez,* supra, *Cruz Flores v. Hosp. Ryder et al.,* 210 DPR 465, 29 (2022); *McNeil Healthcare v. Mun. Las Piedras II,* supra; *Scotiabank v. ZAF Corp. et al.,* 202 DPR 478, 490 (2019).

Dicho alcance amplio y liberal claramente propende a que, mediante el buen uso del descubrimiento, se aceleren "los procedimientos, se propicien las transacciones y se eviten las sorpresas indeseables durante el juicio. *McNeil Healthcare v. Mun. Las Piedras II,* supra. De igual forma, el Tribunal Supremo de Puerto Rico ha expresado que los tribunales de instancia tienen amplia discreción para regular el ámbito del descubrimiento, pues es su obligación garantizar una solución justa, rápida y económica del caso, sin ventajas para ninguna de las partes. *Cruz Flores v. Hosp. Ryder et al.,* supra.

Cónsono con lo anterior, la Regla 34.3 de Procedimiento Civil, 32 LPRA Ap. V., R. 34.3, faculta al Tribunal para emitir sanciones ante el incumplimiento de cualquier orden relacionada con el descubrimiento de prueba. En síntesis, entre las sanciones aplicables, contempla el desacato, así como la emisión de órdenes relacionadas a lo siguiente: (1) que las materias comprendidas sean consideradas probadas; (2) una orden para impedir que la parte que incumple se sostenga u oponga a determinadas reclamaciones o defensas o para prohibirle presentar determinada materia en evidencia; (3) eliminar alegaciones o parte de ellas; (4) suspender

todos los procedimientos posteriores hasta que la orden sea acatada; (5) desestimar el pleito o procedimiento, o cualquier parte de ellos; (6) dictar sentencia en rebeldía; (7) considerar como desacato al tribunal la negativa a obedecer cualquiera de dichas órdenes excepto una orden para someterse a examen físico o mental; (8) sanciones económicas a cualquier parte, testigo, y representante legal, y; (9) el pago de los gastos incurridos incluyendo honorarios, salvo que se demuestre una justificación válida para el incumplimiento.

En *Valentín v. Mun. de Añasco*, 145 DPR 887, 896 (1998), nuestro Más Alto Foro interpretó el alcance de la derogada Regla 34.2 de Procedimiento Civil, la cual es análoga a la actual Regla 34.3(b) de Procedimiento Civil, *supra*. En su interpretación el Tribunal Supremo de Puerto Rico, determinó que dicha disposición provee que un tribunal puede prohibir la presentación de determinada prueba, cuando la parte interesada en presentarla incumpla con una orden del tribunal relacionada con el descubrimiento de prueba. Específicamente, para que proceda este tipo de sanción se requiere que: (1) el tribunal haya emitido antes una orden para llevar a cabo o permitir descubrimiento de prueba; y (2) que la parte que interesa la presentación de la prueba hubiese incumplido la orden referida. *Valentín v. Mun. de Añasco*, supra, pág. 894.

El estado de derecho actual avala la imposición de sanciones severas a la parte que incumpla una orden relacionada al descubrimiento de prueba. *HRS Erase v. CMT*, 205 DPR 689, 700 (2020). No obstante, el ordenamiento jurídico advierte que las mismas no deben emplearse de manera liviana, sino que, previo a ello,

resulta de aplicación el empleo de sanciones menos drásticas. *Íd*. En este contexto, se ha resuelto que la medida severa de excluir el testimonio de un perito es análoga a la medida extrema de la desestimación, por lo que solo debe ser aplicada de manera excepcional. *Rivera et al. v. Arcos Dorados et al.,* supra, págs. 206-207; *Valentín v. Mun. De Añasco*, supra, pág. 895.

Es una norma en nuestro jurídico la que reconoce e impulsa el interés de que todo litigante tenga su día en corte. *Rivera et al. v. Superior Pkg., Inc. et al.*, 132 DPR 115, 124 (1992). Ello se fundamenta en la política judicial que establece que los casos se ventilen en sus méritos de forma rápida, justa y económica. *Amaro González v. First Fed. Savs.,* 132 DPR 1042, 1052 (1993).

-C-

En repetidas ocasiones, el Tribunal Supremo de Puerto Rico ha expresado que en su misión de hacer justicia, la discreción es el más poderoso instrumento reservado a los jueces. *Rodríguez v. Pérez*, 161 DPR 637, 651 (2004); *Banco Metropolitano v. Berríos*, 110 DPR 721, 725 (1981). La discreción se nutre "de un juicio racional apoyado en la razonabilidad y fundamentado en un sentido llano de justicia; no es función al antojo o voluntad de uno, sin tasa ni limitación alguna." *Pueblo v. Hernández García*, 186 DPR 656, 684 (2012), citando a *Santa Aponte v. Srio. del Senado*, 105 DPR 750, 770 (1977); *HIETel v. PRTC*, 182 DPR 451, 459 (2011). Asimismo, "no significa poder para actuar en una forma u otra, haciendo abstracción del resto del Derecho". *Pueblo v. Hernández García*, supra, citando *a Bco. Popular de P.R. v. Mun. de Aguadilla*, 144 DPR 651, 658 (1997).

En *Pueblo v. Rivera Santiago*, 176 DPR 559, 580 (2009), nuestro Tribunal Supremo indicó que existen ciertas guías para determinar cuándo un tribunal abusa de su discreción y, en torno a este particular, estableció lo siguiente:

> […] un tribunal de justicia incurre en un abuso de discreción, *inter alia*: cuando el juez no toma en cuenta e ignora en la decisión que emite, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; cuando el juez, por el contrario, sin justificación ni fundamento alguno, concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en éste, o cuando, no obstante considerar y tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, el juez los sopesa y calibra livianamente. *García v. Padró*, supra, pág. 336; *Pueblo v. Ortega Santiago*, 125 DPR 203, 211 (1990).

En el contexto de dicha doctrina, debemos tener presente el alcance de nuestro rol como Foro Apelativo al intervenir precisamente con la discreción judicial. Así pues, es norma reiterada que este Tribunal no habrá de intervenir con el ejercicio de la discreción del Tribunal de Primera Instancia, "salvo que se demuestre que hubo un craso abuso de discreción, prejuicio, error manifiesto o parcialidad." *Trans-Oceanic Life Ins. v. Oracle Corp.,* 184 DPR 689, 709 (2012), citando a *Lluch v. España Service Sta.,* 117 DPR 729, 745 (1986).

### III.

En el caso de autos, la parte peticionaria alega que incidió el foro primario al excluir a un perito esencial, aun cuando lo anunciaron antes de culminar el descubrimiento de prueba. Sostiene que, el foro *a quo* abusó de su discreción, dado que, el perito en controversia había sido anunciado con tiempo, antes de

finalizar el descubrimiento de prueba, por ello, no había razón para eliminarlo.

Por su parte, MAPFRE arguye que la demanda fue presentada hace más de seis años, teniendo un descubrimiento de prueba extenso y permisivo. Añade que, la parte peticionaria cuenta con un perito estimador y ajustador público, y permitir un nuevo perito sería una duplicidad y redundancia, además de dilatar el procedimiento. Señala que, desde el 19 de noviembre de 2025, la parte peticionaria informó al Tribunal que únicamente restaba por tomar dos deposiciones, y no mencionó nada sobre un nuevo perito. Finalmente, solicitó se confirme la *Orden* recurrida la cual excluye al perito anunciado.

Constituye norma de derecho reiterada que el foro primario goza de amplia discreción para pautar y conducir la tramitación de los procedimientos ante su consideración. *In re Collazo I,* 159 DPR 141, 150 (2003); *Vives Vázquez v. ELA*, 142 DPR 117, 141-142 (1996); *Molina Avilés v. Supermercado Amigo, Inc.,* 119 DPR 330, 337 (1987). El funcionamiento efectivo de nuestro sistema judicial y la más rápida disposición de los asuntos litigiosos requieren que nuestros jueces de instancia tengan gran flexibilidad y discreción para trabajar con el diario manejo y tramitación de los asuntos judiciales. *In re Collazo I*, supra; *Pueblo v. Vega, Jiménez*, 121 DPR 282, 287 (1988).

A su vez, nuestro Tribunal Supremo ha reiterado que una parte no tiene derecho a que su caso tenga vida eterna en los tribunales. *Colón Rivera v. Wyeth Pharm.*, 184 DPR 184, 202-203 (2012); *Carattini v. Collazo Syst. Analysis, Inc.*, 158 DPR 345, 369 (2003*); Mun. de Arecibo*

*v. Almac. Yakima*, 154 DPR 217, 221-222 (2001). A tales efectos, en *Dávila v. Hosp. San Miguel, Inc.,* 117 DPR 807, 816 (1986), el Tribunal Supremo de Puerto Rico expresó que:

> Para lograr impartir justicia al resolver los reclamos de las partes, el tribunal debe hacer un balance equitativo entre los intereses en conflicto ejerciendo especial cuidado al interpretar las reglas procesales para que éstas garanticen una solución justa, rápida y económica de la controversia. Regla 1 de Procedimiento Civil; *Lluch v. España Service Sta*., 117 DPR 729 (1986); *García Negrón v. Tribunal Superior*, 104 DPR 727, 729 (1976). Una parte no tiene derecho a que su caso adquiera vida eterna en los tribunales, manteniendo a la otra en un estado de incertidumbre, sin más excusa para su falta de diligencia e interés en la tramitación del mismo que una escueta referencia a "circunstancias especiales".

Así las cosas, luego de evaluar el expediente ante nuestra consideración, concluimos que no medió arbitrariedad o error, ni abuso de discreción el foro de instancia en su determinación. Por consiguiente, nos abstenemos de intervenir con dicho criterio en esta etapa del caso. Tampoco está presente circunstancia alguna de las contempladas en la Regla 40 de nuestro Reglamento, *supra*, que nos permita revocar el dictamen recurrido. Cónsono con lo anterior, denegamos el auto de *certiorari* solicitado.

## IV.

Por los fundamentos antes expuestos, **DENEGAMOS** la expedición del auto de *certiorari*.

Lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones